## Commonwealth of Pennsylvania v. Spohn, Appellant.

Argued December 10, 1928.

Before TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ.

*Michael A. Foley,* for appellant.

*Joseph DeVito,* Assistant District Attorney, and with him *John Monaghan,* District Attorney, for appellee.

OPINION BY CUNNINGHAM, J., January 25, 1929:

By this appeal we are asked to reverse the conviction of appellant in the municipal court of Philadelphia of the crime of bigamy. The indictment was drawn under the Act of March 27, 1903, P. L. 102, and charged in substance that appellant in 1920 entered into "a certain contract of marriage" with Mary E. Thompson, the prosecuting witness, and afterwards, in 1928, while still married to and the lawful husband of the prosecutrix, unlawfully married one Catherine Chism Logan. The defendant demurred to the evidence introduced by the Commonwealth, thereby admitting all the facts which it tended to prove and all inferences reasonably deducible therefrom: Com. v. Ernesto et al., 93 Pa. Superior Ct. 339, and cases there cited. Upon joinder by the Commonwealth therein it became the duty of the trial judge to discharge the jury and enter such judgment as the evidence warranted: Com. v. Sonis et al., 81 Pa. Superior Ct. 205. The court overruled the demurrer and adjudged appellant guilty as indicted. A few days later (following the practice approved in Com. v. Walinski, 18 Pa.

Dist. Reports 504) an order was entered suspending the sentence, placing the defendant on probation for a period of six months and decreeing "that the second marriage of the defendant, George W. Spohn, to Catherine Chism Logan, on the fourteenth day of February, A. D. 1928, be and the same is hereby declared null and void and of no effect in law."

The assignments charge error in refusing to sustain the demurrer and, although several reasons are advanced in support of appellant's contention, it is clear that the controlling question is whether there was any competent evidence on the part of the Commonwealth to support a finding that appellant had ever entered into a contract of marriage with the prosecutrix; in other words, whether the first marriage averred in the indictment was sufficiently proven. The Act of 1903 repealed and supplied the 34th section of the Act of March 31, 1860, P. L. 392, which provided that "if any person shall have two wives or two husbands at one and the same time, he or she shall be guilty of a misdemeanor," etc., and was probably passed to cure the defects in the Penal Code, pointed out in the well considered and comprehensive opinion of SULZBERGER, J., under date of February 14, 1902, in Com. v. Bernard, 11 Pa. District Reports 156. In view of the evidence in this case it would serve no good purpose to compare the provisions of the two acts. The prosecutrix testified positively that no civil or religious marriage ceremony between appellant and herself had ever been performed. The indictment charged, substantially in the language of the Act of 1903, that in 1920 appellant "did enter into a certain contract of marriage with, and did then and there marry one Mary E. Thompson, and the said Mary E. Thompson then had for lawful wife" and in 1928, while she was alive and before the said marriage had been legally declared void or annulled by the decree

of a proper court of record, "did unlawfully marry and go through a form of marriage recognized as binding under the laws of the said Commonwealth of Pennsylvania with one Catherine Chism Logan." The inquiry therefore is whether the Commonwealth by its evidence established the existence of a valid common law marriage between the prosecutrix and appellant.

There was evidence of cohabitation and reputation and of the purchasing, mortgaging and leasing of real estate in their joint names, in some of which instruments she is described as appellant's wife. "The joining in conveyances as husband and wife is not conclusive on the question of marriage": McDevitt's Est., 280 Pa. 50, 53. The chief difficulty with the Commonwealth's case, however, is that the evidence of the prosecutrix, herself, directly rebuts any presumption of marriage which might otherwise have arisen from the evidence of reputation, cohabitation and joint conveyances. In 1920 she was conducting an apartment house in the City of Philadelphia and appellant was one of her tenants. Their relations were illicit in their inception, as shown by her answers to the following questions by the court: "Q. You started to live together, is that what you mean? A. Yes, your Honor. Q. Did he ever marry you? A. He did not." Such meretricious cohabitation is presumed to continue in the absence of proof, direct or circumstantial, to the contrary. The presumption may be rebutted and the relation shown to have become matrimonial by a lawful common law marriage, but the circumstances must be such as to prove satisfactorily that it was changed to matrimonial union by mutual consent: McDevitt's Est., supra, reaffirmed in Edwards v. Enterprise Manufacturing Co., 283 Pa. 420. After stating in answer to further questions by the court that their relations began about three months after appellant

came to live at her house, the prosecutrix continued: "I was to sell out that house and go with him to live private as his wife." On cross-examination she testified that at the beginning of their relations she had an "understanding with him" that they "were to be married legally." Another portion of her testimony on cross-examination reads: "Q. You intended sometime in the future to get married? A. Yes. Q. You always intended that? A. Yes. Q. But you never did? A. No. ...... Q. You intended sometime to really get married? A. We had started out three or four times to get married. ...... Q. That is correct, isn't it? You intended to? A. Not I, he also. Q. The both of you really intended to, but never did? A. Yes. Q. You broke up before that happened? A. When he got married to another woman."

A witness for the Commonwealth testified that he had boarded with the prosecutrix and appellant for a period of three years; that they had been introduced to him as husband and wife; that "on occasions when they went out they were introduced as Mr. and Mrs. Spohn;" and that they were known generally as husband and wife. On cross-examination, however, this witness testified that he knew there had been no marriage ceremony and that he had frequently heard them discuss the question of having a ceremonial marriage. A part of his testimony reads: "Q. I asked you if you knew they were not married and you said yes, and so we will not be mistaken. I want you to tell in detail how you knew they were not married. A. It was discussed at the place between the two of them. George wanted to get married quite a few times and May didn't want to. Q. She didn't want to? A. Not at that time. Q. They discussed it frequently? A. Yes, they discussed it frequently. Q. Take one or the other; they at one time or another wanted to get married, when one did the other didn't—when May Thompson wanted to get married, George didn't, and

when George did, she didn't. A. Yes. Q. They talked about it very frequently? A. Yes."

In the Estate of Robert Murdock, 92 Pa. Superior Ct. 275, the essentials of a valid contract of marriage were fully considered. The English and American authorities were carefully reviewed and analyzed in the opinion written for this court by Judge KELLER, and need not be referred to here. Several of the conclusions there reached are applicable to the evidence in this case. It was held that marriage is in law a civil contract, and does not require any particular form of solemnization before officers of church or state, but the contract must be made by words in the present tense, uttered with a view and for the purpose of establishing the relation of husband and wife, and that a contract made *per verba de futuro,* although followed by consummation and cohabitation, is not a valid contract of marriage. In that case, as in this, the alleged wife testified to the conversation and understanding between the parties and there was evidence of cohabitation and reputation. Such evidence is always admissible in corroboration of the testimony of one of the parties that a marriage contract was in fact entered into, but it is by no means conclusive. As peculiarly applicable to the evidence in this case we quote the following paragraph from the opinion in the case cited: "But if she herself proves that no valid marriage contract was actually entered into between them, evidence as to cohabitation and reputation goes for nothing: Tholey's App., 93 Pa. 36, 38; Grimm's Est., 131 Pa. 199, 202. As was said by our Supreme Court in Bisbing's Est., 266 Pa. 529, 531, reaffirming Hunt's App., 86 Pa. 294, 297, 'Cohabitation and reputation are not marriage; they are but circumstances from which a marriage may be presumed, but such presumption may always be rebutted and will wholly disappear in the face of proof that no marriage in fact had taken place.' "

There is not a particle of evidence in the present case that the prosecutrix and the appellant "entered into a contract of marriage" by words in the present tense, uttered with a view to establishing the relation of husband and wife; the strongest inference that can be drawn from the evidence introduced by the Commonwealth is that they had an "understanding" that they would be legally married some time in the future. After careful consideration of all the evidence we are of opinion that the demurrer should have been sustained and the defendant discharged.

The order of November 2, 1928, placing the defendant on probation and declaring the marriage of defendant to Catherine Chism Logan on February 14, 1928, null and void, is reversed and the defendant is discharged.