Commonwealth of Pennsylvania *v.* Pent, Appellant.

Argued November 20, 1933.

Before Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*Chas. Edwin Fox* of *Fox, Rothschild, O'Brien & Frankel*, and with him *Saul, Ewing, Remick and Saul*, for appellant.

*Franklin E. Barr*, Assistant District Attorney, and with him *Charles F. Kelley*, District Attorney, and *Edwin M. Abbott*, Attorney, Department of Justice, for appellee.

OPINION BY KELLER, J., February 1, 1934:

Howard F. Pent, this appellant, was jointly indicted with his son, Robert E. Pent, and Alexander D. Robinson, Vice-President and Treasurer of the Northwestern Trust Co., charged with having conspired with them, (1) to fraudulently assign and transfer to this appellant property and assets of the Coraza Cigar Co. of the value of $128,260.09, with intent to defraud the creditors of said Coraza Cigar Co. (indictment No. 495, July Sessions, 1932; Appeal No. 309, October Term, 1933); and (2) to cheat and defraud the Northwestern Trust Co. of $47,000 (indictment No. 496, July Sessions, 1932; Appeal No. 308, October Term, 1933).

When the cases were called for trial counsel for the Pents, father and son, and the assistant district attorney presented a statement of facts which had been agreed upon between them covering those two defendants, and stated that with those facts agreed upon as the Commonwealth's case, they would demur to the evidence. The court very properly pointed out that there could not be a demurrer to the evidence as to two out of the three defendants jointly indicted for conspiracy until the Commonwealth's case was closed, and that the agreed statement of facts would be subject to such corrections or modifications as might develop from the evidence produced by the Commonwealth; and counsel for the Pents then said that the statement of facts would be filed subject to any corrections that might develop. The trial judge called counsel's at-

tention to the fact that in view of what he had said counsel might want to ask some questions of the Commonwealth's witnesses; to which he replied, ''If there is any contradiction, yes.''

At the close of the Commonwealth's case, the assistant district attorney offered the statement of facts agreed upon between counsel for the Pents and himself, and the exhibits attached thereto, as well as any exhibits that had been offered in evidence during the presentation of the Commonwealth's case. The two Pents then demurred to the evidence. The Commonwealth tacitly joined in the demurrer. The court discharged the jury from consideration of the case as to the Pents. The jury trial proceeded as to Robinson. The court, subsequently, on consideration of the evidence presented by the Commonwealth as well as that ''properly contained in the statement filed,'' overruled the demurrer, entered judgment for the Commonwealth and against the two defendants, adjudging them guilty in manner and form as indicted.

In passing upon the statement of facts the court said: ''The so-called agreement of facts or statement filed as supplementary and additional evidence in this case is irregular in form and substance; it is in large part merely argumentative, and in important particulars abounds in inferences and conclusions which are not justified by the uncontradicted facts in evidence. Of course, by such impertinent and non-evidential matters the court is not and cannot be bound in deciding the demurrer before it.''

The court had warned appellant's counsel that the evidence adduced in court from the Commonwealth's witnesses was superior to and would supersede any statement of facts agreed to between counsel representing this appellant and the Commonwealth respectively; and counsel in thereafter demurring to the evidence was bound to know the effect of such a

course: That it admitted the truth of the evidence produced by the Commonwealth, and in so far as that evidence was inconsistent or contradictory in details that the inferences most favorable to the Commonwealth were to be drawn by the court in passing upon the demurrer. In view of this, appellant's counsel could not have been misled or prevented from cross-questioning the Commonwealth's witnesses. The court had, in addition, specifically called this matter of cross-examination to counsel's attention.

The practice on demurrers to the evidence in criminal cases has been passed upon by this court in Com. v. Williams, 71 Pa. Superior Ct. 311; Com. v. Ernesto, 93 Pa. Superior Ct. 339, 341; Com. v. Smith, 97 Pa. Superior Ct. 157; and Com. v. Kolsky, 100 Pa. Superior Ct. 596—which refer back to Hutchison v. Com., 82 Pa. 472, 474, 478, 479 and Com. v. Parr, 5 W. & S. 345, in which latter case it was said, "that, on a demurrer to evidence, *every fact which the jury could infer in favor of the party offering it,* from the evidence demurred to, was to be considered as admitted."

We find nothing in the action of the court below which is in any respect contrary to the practice as laid down in those cases.

The court was bound to hear the evidence of the Commonwealth before any of the defendants could demur to it; and it was for the court, not the district attorney, to draw the inferences to be made from that evidence; and in so far as the testimony of the Commonwealth's witnesses and the exhibits received in evidence as part of the Commonwealth's case clashed, or were at variance, with the agreed statement of facts, the latter gave way   (Com. v. Parr, supra), and appellant's counsel could not fail to understand this.

Appellant's present counsel cites and relies upon

Com. v. Smith, supra, as sustaining his contention that the court should not have heard or considered any evidence as to the Pents, beyond the statement of facts, but it does not support his position. In that case, after the Commonwealth's case had closed, and two of the three defendants had demurred to the evidence, and the case as to them had been withdrawn from the jury, and the case proceeded to the hearing of the witnesses produced by the third defendant, the court attempted to reopen the case as to the two defendants who had demurred to the evidence and use the evidence of the third defendant in passing on the demurrer. We held that this could not be done; that no evidence produced by the defendant who had not demurred could be considered in passing on the demurrer of the two defendants who had demurred. The court below, in this case, in passing upon the demurrer filed by the Pents, considered no evidence produced by Robinson in his defense, after the Commonwealth's evidence had closed. It did just what we said the court should have done in the Smith case—restricted its judgment on the demurrer to the evidence which had been received up to the closing of the Commonwealth's case.

Appellant's counsel has also misconstrued our statement in the Smith case, quoted from the case of Com. v. Williams, supra, that "The court in such case is not the trier of the facts." The context, with the cases cited in support of the proposition, explains the statement as meaning, that it is not the duty of the court in such cases, to weigh the evidence and decide, as a trier of fact would do, whether the Commonwealth's witnesses are speaking the truth or not, because "in criminal cases demurrer to the evidence of the Commonwealth *admits all the facts* which the evidence tends to prove, and all inferences reasonably deducible therefrom": Com. v. Williams, supra, p. 313. The

court is not the *trier* of the facts, because they are all *admitted* by the demurrer; but it is the duty of the court to draw the inferences and conclusions reasonably deducible from the facts in evidence, as admitted by the demurrer; and the cases cited above expressly so hold. See Com. v. Hutchison, supra, p. 479, where the Supreme Court said: "By this act [demurrer to the evidence], they [the defendants], threw the decision of both the law and the facts upon the court." And this duty cannot be assumed by the district attorney. Nor is the court's duty in this respect affected by any attempted assumption of that duty by the district attorney.

This discussion disposes of the assignments of error in so far as they take exception to the practice adopted by the court below on the demurrer to the evidence.

The only remaining question to be considered is whether the evidence of the case, including so much of the agreed statement of *facts* as was not contradictory to or at variance with the evidence of the Commonwealth's witnesses and the exhibits offered in evidence in connection therewith, was sufficient to sustain the conviction of the appellant: Hutchison v. Com., supra, p. 478. These facts may be briefly stated as follows: Sometime prior to 1922 the Northwestern Trust Co., which was a creditor of the Steigerwalt Cigar Co. in the sum of $200,000, bought at a bankruptcy sale the assets of said company and subsequently thereto it incorporated the Coraza Cigar Co. with a capital stock of $100,000 consisting of 1000 shares of the par value of $100 each, and transferred to the Coraza Cigar Co. the assets formerly of the Steigerwalt Cigar Co. in return for its capital stock. Near the close of that year Howard F. Pent became president of the Coraza Cigar Co. Fifty shares of the stock were registered in his name, one share in the name of Oliver L. Croll, an employe of the Trust

Company, and 949 shares in the name of the Trust Company. Howard F. Pent continued as president of the Coraza Cigar Co. until the Northwestern Trust Co. closed its doors in July, 1931. For the five months ending December, 1922, the Coraza Cigar Co. made a profit of $109.06. Thereafter its operations resulted in continuous losses, ranging from a low of $22,228 in one year to a high of $110,240.14 in another. The total loss in operation exceeded $750,000. During all this time Howard F. Pent was president and manager and received a salary of between $5,000 and $10,000 per annum. His son, and co-defendant, Robert E. Pent was made vice-president and a salaried officer of the Coraza Cigar Co. in 1927.

The Coraza Cigar Co. kept an account with the Northwestern Trust Co., but this account was continually overdrawn. Checks signed by Howard F. Pent, as president, and Robert E. Pent were drawn on the Trust Company when the books of the Cigar Company showed it had no funds on deposit. These checks were paid by the Northwestern Trust Co. by direction of Robinson and were carried as cash items until they totalled a considerable sum,—anywhere from $10,000 to $50,000,—when a note of the Cigar Company, signed by Howard F. Pent as president, would be given the Trust Company, the amount thereof being credited to the Cigar Company's account and the overdraft checks charged to the account. This method of paying overdrafts was continuously repeated. The notes were not brought to the attention of, nor passed upon by, the directors of the Trust Company. When the Northwestern Trust Co. closed, a number of blank notes signed by Howard F. Pent, as president of the Coraza Cigar Co., and individually, were found in the possession of the Trust Company to be used to make up overdrafts. This was the usual practice, to have blank notes left with the Trust Com-

pany to fill in, credit the Cigar Company's account and charge off the overdrafts. When the notes of the Coraza Cigar Co. reached what was considered an excessive amount, the Trust Company would charge the Coraza Cigar Co. stock off as a loss and buy it back again for $50,000 or $100,000, credit the Cigar Company's account with the repurchase price and charge off an equal amount of overdue notes. Although the capital of the Cigar Company had never been legally increased above $100,000, when these notes were charged off they were carried as a bookkeeping item on the books of the Cigar Company as capital stock, increasing the latter to $419,000.

On April 16, 1931, Robinson, without the knowledge or authority of the board of directors, gave to Robert E. Pent a power of attorney to vote the Trust Company's 949 shares of Coraza Cigar Co. stock, at a meeting of the stockholders, to compensate Howard F. Pent for his past services. The stock was so voted by Robert E. Pent and there was transferred to Howard F. Pent $128,260 of the cream of the assets of the Coraza Cigar Co. under a resolution purporting to compensate him for his exceptional skill and success as directing head of the company and outstanding capacity as a tobacco executive, although during the eight and a half years of his management the Coraza Cigar Co. never made a profit, but lost $750,000. The real purpose of the resolution was to transfer these assets from the Coraza Cigar Co. to Howard F. Pent in order that he might be instrumental in organizing a new cigar company known as Penlo Cigar Co.; for which assets, 3,000 shares of the stock of the new corporation were issued to him, the plan being that some other interests, known as the Arenco Machine Co., would make a loan of $50,000 to the Penlo Cigar Co. under the management of Pent, and, if the new corporation was successful, would

subscribe for 2,000 shares of its capital stock. The stock issued to Pent was in two certificates of 1,501 and 1,499 shares respectively both of which were placed with the Northwestern Trust Co. in escrow in accordance with the terms of certain letters of transmittal written by Pent to the Northwestern Trust Co. and agreed to by Robinson on its behalf, in which Pent claimed absolute title to the certificate for 1,501 shares and made no admission of interest in Coraza Cigar Co. or the Trust Company as to the certificate for the other 1,499 shares standing in his name. After the closing of the Trust Company, the Arenco Machine Co. demanded that the Secretary of Banking send the certificate for 1,501 shares of Penlo Cigar Co. stock to it, and Pent joined with the Arenco Co. in a written demand for the *1,499* share certificate claiming it as his personal property; and Pent's attorney also made written claim to the Banking Deputy in charge that the entire 3,000 shares belonged to Pent, and that the Northwestern Trust Co. only held it in escrow for him subject to an option agreement with the Arenco Machine Co.

On this state of facts there is ample evidence to justify the decision of the court below. If submitted to a jury it would have justified a finding by the jury that the defendant, Howard F. Pent, was guilty beyond a reasonable doubt, in manner and form as he stood indicted. He had received during his incumbency as president and manager the salary voted to him and which he had accepted as payment for his services as such. The plan adopted, reciting in detail that his services had been of such value to the company,—although they had actually resulted in a loss of $750,000,—that it voted to him $128,260 of the cream of the assets of the corporation, was only a subterfuge to attempt to transfer that amount of property from the reach of the creditors of the Coraza Cigar

Co. to a new corporation; and the resolution shows the purpose to vest Pent with the title and ownership in these assets; and the issue of stock of the Penlo Cigar Co. in exchange for these assets by certificates in his name, followed by a demand on his behalf that the certificates should be turned over to him as his property, shows an intent on his part personally to benefit by the transaction. Whether he had personally benefited by the transaction or not would not have been material if he conspired to put these assets out of the reach of the creditors of the Coraza Cigar Co. He would be just as guilty of conspiracy if it had been his intention to turn the stock over to a third person, but the evidence of the Commonwealth and the exhibits offered in connection therewith show conclusively an attempt on the part of Howard F. Pent to benefit by the conspiracy; and in the face of such evidence the court was justified in paying no heed whatever to the statement as agreed upon by the counsel for the appellant and the assistant district attorney that the Pents did not benefit in any way from the money put into the Coraza Cigar Co. by the Northwestern Trust Co. except in the matter of their salaries. The same may be said with regard to the statement in the agreed statement of facts that 1,499 shares of stock in the Penlo Cigar Co. were to be given the Coraza Cigar Co. or the Northwestern Trust Co. and that Pent was to receive personally only 1,501 out of the 3,000 shares of stock. The evidence shows that Pent claimed all the stock until after he was indicted. But whether he claimed all or only half of the 3,000 shares so issued, he benefited to the extent of the stock thus issued to him at the expense of the creditors of the Cigar Company. Valuing the 3,000 shares of Penlo stock at the amount of assets of the Coraza Cigar Co. transferred for it, it was worth $128,000. If the purpose was to give appellant all the stock, as the resolution declares,

and his letters and those of his attorney confirm, he would benefit from the transaction to the extent of $128,000; if only one-half was transferred to him he would personally benefit to the extent of $64,000 by the transfer.

We have carefully considered the evidence and are of the opinion that it warrants a finding by a jury that the defendant was guilty in manner and form as he stood indicted under No. 495, and that any other conclusion by the court below than that the Commonwealth was entitled to judgment on the demurrer would have been erroneous.

On the other indictment, (No. 496), the proof is not quite so strong, but we think it sufficient to support the judgment of the court below. After the cream of the assets of the Coraza Cigar Co. had been transferred to Pent and through him to the Penlo Cigar Co., Howard F. Pent and Robert E. Pent continued to draw checks of the Coraza Cigar Co. on the Northwestern Trust Co.—many of them for pay-rolls, covering their salaries,—amounting to $47,000, which were paid by the Trust Company by Robinson's orders and carried as cash items although there were no credits in the Cigar Company's account to meet the same, and although the drawers of the checks knew that the funds would be paid by the Trust Company not out of funds deposited by the Coraza Cigar Co. but out of other moneys and deposits of the Northwestern Trust Co. The Coraza Cigar Co. had parted with a large part of its assets by the transfer above referred to; its business operations, such as they were, were being conducted at a great loss; and the Pents when they drew these checks must have known that there was no reasonable likelihood of the overdrafts being made good by the Cigar Co.

We are of the opinion that this would justify a finding, if submitted to a jury, that there was a con-

spiracy between the Pents and Robinson to appropriate $47,000 of the funds of the Trust Company to the use of the Coraza Cigar Co. and that these appellants, who were drawing salaries as officers of the Coraza Cigar Co., were thus defrauding the Trust Company of the moneys so drawn. As the sentence on this indictment is for the same period and runs concurrently with the sentence on indictment No. 495, the judgment of the court below on this indictment has not added to appellant's sentence.

On full consideration of all the evidence we find no error in the action of the court below, and the judgments are severally affirmed, and it is ordered that the appellant appear in the court below at such time as he may be there called and that he be by that court committed until he has complied with the sentences or any part of them that had not been performed when the appeals in these cases were made a supersedeas.