Commonwealth *v.* Robinson et al. (Pent, Appellant).

Argued October 3, 1934. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*John P. Connelly,* with him *J. Vincent Brophy,* for appellant.

*Franklin E. Barr,* Assistant District Attorney, with him *Edwin M. Abbott* and *Charles F. Kelley,* District Attorney, for appellee.

OPINION BY MR. JUSTICE KEPHART, January 7, 1935:

Appellant was convicted and sentenced to prison for conspiracy to defraud. The Superior Court affirmed the conviction and from that judgment an appeal was allowed.

The order allowing the appeal was restricted to "whether the defendant's constitutional right to an impartial trial by jury was denied by the action of the trial judge in accepting the agreed statement of facts subject to any contradictions contained in the evidence produced in the trial of the codefendant, and in entering judgment and pronouncing sentence upon his conclusions drawn from the statement and such other testimony." Section 6 of the Constitution provides that "Trial by jury shall be as heretofore, and the right thereof remain inviolate." Inasmuch as the docket shows that no plea was entered or a jury sworn to try the defendant, it was a clear violation of his constitutional right for the trial judge, by an unwarranted usurpation of the jury's function, to assume to determine the question of the defendant's guilt or innocence on the statement of facts submitted to him, together with the evidence presented in another and different, although related, case. The defendant's rights are not to be thus prejudiced; unless it affirmatively appears in a criminal case that the jury was sworn as to all defendants, the constitutional provision is breached: Mansfield's Case, 22 Pa. Superior Ct. 224, citing Doebler v. Com., 3 S. & R. 237; Dunn v. Com., 6 Pa. 384; Pennell v. Percival, 13 Pa. 196; Van Swartow v. Com., 24 Pa. 131; Warren v. Com., 37 Pa. 45; Byers v. Com., 42 Pa. 89; Lavery v. Com., 101 Pa. 560; Stewart v. Com., 117 Pa. 378; Com. v. Saal, 10 Phila. 496. Moreover, the order allowing the appeal was broad enough to present to us any questions as to the substantial infringement of the right to trial by jury. And, of course, basic and fundamental error, such as here, will be considered even if not pointed out in the court below: White v. Moore, 288 Pa. 411. "A man is not to be deprived of his liberty and reputation because of the inadvertence of a trial judge or the carelessness of his counsel in failing to call the attention of the trial court to palpable error which offends against the fundamentals of a fair and impartial trial": Com. v. O'Brien, 312 Pa. 543, 546.

324

The indictment on which Howard Pent, appellant, was found guilty, charged Alexander Robinson, Howard and Robert Pent with conspiracy to defraud a banking institution. When the jury was called and examined on their voir dire it was by counsel for Robinson only. The assistant district attorney asked each juror, with but one exception, "Do you know Mr. Robinson, the defendant?" Pent's name was not mentioned. His counsel took no part in that examination. When the plea was entered it was entered as to Robinson only, and when the jury was sworn it was sworn as to Robinson only. The record shows that no plea was entered as to Pent, and that the jury was not sworn as to him.[1]

---

[1] "Docket Entries.
"July Sessions, 1932, No. 495.

"February 24, 1933, Court Room 296, Present HON. JAMES G. GORDON, JR., defendant, Alexander D. Robinson, present and being arraigned, pleads Not Guilty to said indictment.

"District Attorney for the Commonwealth replies Sim et Issue.

"Same day, said defendant present, a jury being called, came, to wit, same jury as on Bill No. 480, July Sessions, 1932, who were all duly impaneled, sworn or affirmed, do say:

"February 28, 1933. Verdict GUILTY as to defendant, Alexander D. Robinson.

"Same day, Motion made on behalf of defendant, Alexander D. Robinson, for a Rule to show cause why a new trial should not be granted.

"Same day, Present HON. JAMES G. GORDON, JR., defendants, Howard F. Pent and Robert E. Pent, present, on advice of their counsel, demurred to the evidence.

"Docket Entries.
"July Sessions, 1932, No. 496.

"February 24, 1933, Court Room 296, Present HON. JAMES G. GORDON, JR., defendant, Alexander D. Robinson, present, a jury being called, came to wit, same as on Bill No. 480, July Sessions, 1932, who were all duly impaneled, sworn or affirmed, do say:

"February 28, 1933. Verdict GUILTY as to defendant, Alexander D. Robinson.

"Same day, Motion made on behalf of defendant, Alexander D. Robinson, for a rule to show cause why a new trial should not be granted.

Counsel representing defendant Howard Pent had prepared a set of facts with the assistant district attorney before the case was called for trial; these were to be submitted to the court below. Its decision as to Pent's guilt or innocence was to be based on this statement. A plea had been entered for Robinson and the jury was sworn only in his case. The omission of these formalities as to Howard Pent was no doubt brought about under the following circumstances:

The statement of facts was submitted as the trial opened in Robinson's Case. The trial judge then gave Pent one of two alternatives: (1) "I am perfectly satisfied to have you two gentlemen, after the conclusion of the case, present any agreement as to facts that you shall have to offer"; (2) "If you want to do that now, you may; but if you do it now, you must present it subject to any corrections or modifications that may be offered in the presentation of the Commonwealth's evidence." The agreed statement of facts was not presented to the court or jury. During the Robinson trial, Pent's counsel took no part in the examination or cross-examination of witnesses. At the conclusion of the Commonwealth's case, the district attorney made this offer: "I now want to offer in evidence this agreed statement of facts between Mr. Saul and myself with the exhibits attached. It is also agreed that any exhibits which have been offered in Mr. Robinson's case should be considered a part of this agreed statement of facts." The court, "You are offering this now as to the Pents?" Mr. Barr, "Yes. And it

"Same day, the Court ordered that the defendant, Alexander D. Robinson, sign his own recognizance in the sum of Fifteen thousand dollars, pending motion and disposition of motion for a new trial, to appear March 3, 1933, in Room 296, City Hall.

"February 28, 1933. Present Hon. James G. Gordon, Jr., defendants, Howard F. Pent and Robert E. Pent, present and on advice of their counsel, Demurred to the evidence."

The original record of this case and the records in the office of the quarter sessions have been examined; nothing to contradict these docket entries was found.

may be considered as if taken in the form of testimony, as an agreed statement of the testimony."

But Pent's counsel, at this point, demurred to the evidence. It is manifest that the only evidence he believed he was demurring to was that contained in the statement of facts with the modification agreed to, namely, the "exhibits" in Robinson's Case. The court said as to the "agreed statement" offered by the assistant district attorney, "You are offering this now as to the Pents?" Clearly, in the mind of the district attorney, there was nothing in the Robinson testimony that contradicted the agreed statement of facts other than the exhibits, for he had so limited the offer of the statement. If the district attorney had any doubt about any other testimony in that case he could at least have endeavored to make the statement subject to all the testimony in the Robinson Case.

The trial judge in finding defendant guilty took into consideration the facts developed in the Robinson Case, but refused to consider the agreed statement of facts. See Com. v. Smith, 97 Pa. Superior Ct. 157. If the statement of facts was to be believed, Pent was not guilty, as criminal intent was denied therein.

Had the case then gone to the jury as to Pent, without a jury sworn and plea entered, a conviction could not stand. Had the case then gone to the jury and Pent been acquitted, that acquittal would have been for naught as Pent could not plead former acquittal; as to him there had been no trial: cf. Com. v. Zepp, 3 Clark 311, 5 Pa. L. J. Rep. 256, PARSONS, J.

With the record in this condition there could be no demurrer to the evidence, as will be seen later. A trial by jury must preserve all the fundamental and basic requirements of such trial. Immaterial irregularities may be overlooked. See Sadler, Criminal and Penal Procedure, section 434; Com. v. Fritch, 9 Pa. Co. Ct. 164. But irregularities that strike at the foundation of a trial should never be tolerated. A defendant in a criminal case cannot waive trial by jury: Com. v. Hall, 291 Pa. 341. A de-

fendant cannot and should not be permitted to waive the swearing of his jury. The swearing of the jury is not a mere formality. In capital cases it is this very act which determines whether or not the defendant is in jeopardy.[2] This omission, affirmatively shown as a fact of record, is so vital to trial by jury that further discussion is unnecessary. While it is the duty of a trial judge to see that a jury is sworn, it is the duty of the district attorney to see that pleas are entered and that the jury is sworn as to all defendants who go to trial. In this view of the case, without jury sworn, and with defendant taking no part in the trial, he may be considered as a spectator; he was never on trial.

The court of quarter sessions is a court of record. It is the duty of the clerk of that court to make an official record, in a book kept for that purpose, of the proceedings vital to the cause then before the court. What proceedings are more vital in a criminal case than the swearing of the jury to try the cause? It may be assumed that in the regular course of business such duties will be attended to, and general experience shows this to be correct, but this assumption cannot be permitted to rise to the force of legal presumption, because to do so would be to permit mere deductions to take the place of vital elements in a criminal trial; the record should, therefore, affirmatively show the existence of such vital procedural matters. See 5 Wigmore on Evidence, 2d ed., section 2534. In the instant case, the record completely fails to show that the jury was sworn to try him. Without destroying the safeguards of trial by jury as known to the common law, we cannot presume that such was done. We have definitely passed on this question.

In Dougherty v. Com., 69 Pa. 286, it was contended that there was a presumption, in criminal as well as in civil cases, that the proceedings were regular, and that it was incumbent upon the plaintiff in error (defendant) to

[2] McFadden v. Com., 23 Pa. 12, 16; Hester v. Com., 85 Pa. 139, 154; Alexander v. Com., 105 Pa. 1, 9.

show affirmatively by the record that errors were committed before we could interfere. We there held that where the substantive part of a record was clearly wanting its existence may not be supplied by the presumption that all things are rightly done. The presumption that "things are rightly done" applies to presumptions that emanate from the record, as, for example, when the record shows that the jury was sworn as to the defendant it will be presumed that they were properly sworn or affirmed.

In Doebler v. Com., supra, a conviction was reversed because the record failed affirmatively to show that the twelve jurors were sworn. We said: "It is stated in the record, that a jury being called, came, etc. The names of the jurors are then given, which are eleven only in number, although they are said to be twelve sober, judicious, honest and lawful men. It is afterwards mentioned, 'that George Fisher, one of the jury (whose name is not among the eleven), appearing insensible from intoxication, the court directed him to be withdrawn and another called in his stead, the counsel for the Commonwealth agreeing thereto, and the counsel for the defendant declaring that he neither assented nor objected to it.' Supposing, now, that the juror called in the stead of Fisher, with the others whose names are mentioned, made twelve, yet it nowhere appears what his name was nor that he was sworn . . . but it does not appear, that anything more is to be found than the record first sent up.[3] Inasmuch then as from that record it does not appear that the defendant was tried by twelve jurors, lawfully sworn, etc., I am of opinion, that the judgment should be reversed." Commenting on this case in Dunn v. Com., supra, we stated that the record showed that twelve jurors came but only eleven were named; the one named George Fisher was omitted. We said: "But the court

---

[3] The writer of this opinion examined in the office of the court below every paper relating to this case. There is nothing except what has been sent up to us as the record.

reversed the judgment, because it did not appear, *from the record,* that twelve jurors were sworn. This is a strong case, stronger than the one in hand, and establishes that presumptions are not to be allowed *when they would arise almost inevitably from the record."* [Italics supplied.] In Pennell v. Percival, supra, the Doebler Case was again referred to as an authority; it was there stated that the record did not show that twelve jurors were sworn. In Com. ex rel. v. Egan, 281 Pa. 251, 257, in discussing the effect of Com. v. Doebler, supra, we said, "The decision reached was expressly based on the fact that the record failed to show that the twelfth and substituted juror was sworn."

In Dunn v. Com., supra, it was not stated in the record that the defendant was present when the jury returned its verdict, nor indeed was it expressly stated that he was present at his own trial. The record did show that he was arraigned and pleaded, and that a day or two later "men duly summoned, returned, chosen, by ballot, impaneled and sworn, Nov. 13, 1844, who, upon their oaths, did say," etc. Furthermore, it did not affirmatively appear that the defendant was present when the judge sentenced him, although it did appear in the record "the court sentenced George Dunn . . . to be taken to the jail in Allegheny County, *from whence you came."* [Italics supplied.] At page 389, Judge COULTER, the writer of the opinion, said, "We may safely presume, as individuals, that, in tranquil times, and in an enlightened city, the conduct of the trial was all right; but, as a court, we can look only to *the record,* for this record and judgment will be recorded as a precedent for other times; and, if we let in presumptions to supply omissions and defects in records, it will by and by be deemed scarcely necessary to show by the record any of the important safeguards of the trial by jury; and the common-law forms stoutly asserted as a shield of liberty, by the Hampdens, Russels, and Sidneys of other days, will lose their value. But forms are not merely a shield against the despotism of

kings, for there is occasionally a despotism in all countries—a despotism whose terrible voice is heard in tumults and excitements—in the rage of unrestrained and impetuous will. It is then that the stern and inflexible rules of the common-law trials by jury will best prove their importance and value." This language is particularly applicable in the present day. If the wholesome principle of the common law that a man is to be presumed innocent until proven guilty is not to be done away with, "every record of this kind ought to show clearly that the prisoner was tried and sentenced, and is to suffer according to the substantial forms of the law": Dunn v. Com., supra.

In Pennell v. Percival, supra, it appeared by the record that thirteen jurors were sworn to try the case. The reason apparently was that one juryman did not appear at the trial of the case. "The record presents the singular spectacle of thirteen jurors sworn to the same case, one of whom remains sworn to the present time, without having either rendered a verdict or been properly dismissed. That a case at law tried by thirteen jurors has been held to be error, see Whitemarsh v. Davis, 2 Haywood 113; so, also, in Doebler v. Com., 3 S. & R. 237, it is ruled to be error, if it does not appear from the record that all the jurors were sworn. Thus, when the names of eleven jurors were given on the record, and it was afterwards stated that one of the twelve jurors was withdrawn and another called in his stead, but the name of the juror last called was not given, and it did not appear that he was sworn, judgment was reversed. It was not urged in either of the cases cited, that the mere fact of the trial was evidence of assent. Indeed, in Doebler v. Com., there was strong reason to believe the cause was tried by the requisite number of jurors, and that the error complained of arose from a clerical mistake; but, notwithstanding, the judgment was reversed. It is nothing, that the latter is a criminal case; as, so far as concerns the jury, the mode of selection is the same. The case must be determined by the record,

and it is of the first consequence that so important an element in the administration of justice as a jury, should be selected in the mode clearly pointed out by the act." The duty enjoined in Pennell v. Percival, supra, was followed in Lillie v. Am. C. & F. Co., 209 Pa. 161.

Another case cited is Jewell v. Com., 22 Pa. 94, where it was held that we have no authority to look beyond the record as made up in the court below, which should include the minutes or loose papers whether entered on the docket or not. And in Taylor v. Com., 44 Pa. 131, 132, we said: "But the complaint is, that it does not appear by the record that he had these constitutional and legal rights accorded to him and I agree that, if this were true, the conviction could not stand. In order to ascertain how this is, we must apply ourselves to ascertain what is the record. Is it the minutes of the clerk, or the record presumed to be made up by the court, containing a short and distinct history of the proceedings constituting the trial and judgment, and kept among the records in the well-known and authorized record books? If it be not the latter, there is no safety in records, and their imputed absolute verity would be a mere abstraction, meaning nothing, and resting only on a duty to believe in them. When, therefore, a record is made up, the elements constituting it are not suffered to contradict it. Neither the knowledge of the court nor the minutes of the clerk can avail for this. Either one of them or both together may suffice to correct it, if resorted to in proper time, but the elements so used to correct become the record, and are no longer the recollection of the court, or the minutes of the clerk.

"Now, we have here a complete record of the court, and also the minutes of the clerk, from which it is to be presumed the record was made up, and it is claimed that the latter may not merely explain but contradict the former; that we must consult the inorganized and informal matter, and so set aside the organized, approved, and formal record; that is to say, attack and overturn the record by

something less than the record; overthrow absolute verity by that which imports no absolute verity. To state the proposition is to demonstrate its fallacy."

But it is argued that "It is unimportant whether the jury was sworn or not," and that a retrial should not be ordered for such harmless error. Is it harmless error for a defendant to go to trial without a jury sworn to try him? There is not a single case of record in this State that we have been able to discover—and we feel sure that there is none—in which the jury was not sworn and the demurrer to evidence came at the conclusion of the Commonwealth's case. To hold that it was unimportant whether the jury was sworn or not, in the case of a demurrer to evidence, is an invitation to Star Chamber proceedings. Such a rule would also set aside Com. v. Hall, supra, wherein it was held that jury trial may not be waived. Moreover, how can there be a demurrer to evidence until that evidence is produced in proper form: i. e., before a jury properly sworn or affirmed? If, without plea or jury sworn—or even called, for that matter— a defendant may appear before the judge, with or without an agreed statement of facts presenting his defense, and simply submit to the court the Commonwealth's evidence and his own statement of facts as a basis upon which the judge shall enter judgment, then the Hall Case amounts to nothing, and judges may, as did judges of old, convict because of popular clamor or popular applause, without the healthy safeguard of a jury's verdict. Defendant's rights are safeguarded by adhering to common law forms which existed long before the present Constitution; formalities created as a protection for the innocent and in order to insure a fair trial are not to be sacrificed because of a popular clamor for conviction. It is not amiss to quote again the language of Judge COULTER in Dunn v. Com., supra: "But forms are not merely a shield against the despotism of kings, for there is occasionally a despotism in all countries—a despotism whose terrible voice is heard in tumults and excitements—in the rage of un-

restrained and impetuous will. It is then that the stern and inflexible rules of the common-law trials by jury will best prove their importance and value." Against this relaxation of rules in the trial of criminal cases, see Com. v. Miller, 313 Pa. 567; Com. v. Mull, 316 Pa. 424.

It is said that Pent's failure to plead is of no moment. Wharton, Criminal Pleading & Practice, 8th ed., section 409, states: "The right of arraignment in a criminal trial may, in some cases, be waived, but a plea is always essential. The court cannot supply an issue after verdict where there has been no plea, notwithstanding that the defendant consented to go to trial." See Com. v. Gabel & Gabel, 79 Pa. Superior Ct. 59. To indicate the importance of the plea, the trial court, in Com. v. Raffolowitz, 8 Mont. Co. L. Rep. 210, had the jury resworn because it had been sworn prior to the entry of a plea by the defendant. In Com. v. Blucas, 15 Pa. Dist. R. 82, the court held that the trial could not proceed without a plea, since without a plea there is no issue, and without an issue there can be no valid trial, there is nothing to try. See Shelp v. U. S., 81 Fed. 694; Crain v. U. S., 162 U. S. 625; Lynch v. State, 99 Tenn. 124, 41 S. W. 348.

But, it is asserted in the application for allowance of an appeal to this court, the defendant pleaded "Not Guilty." We need not discuss the manner in which such petitions are gotten up. The fact is, and still remains so, that the record does not show his plea. Neither counsel nor the court can correct that record in the manner here attempted. That such proposition has been definitely ruled is without question. We have held that an opinion of a trial court refusing a new trial is no part of and cannot correct the record in the case; a fortiori, a petition to this court for an allocatur cannot thus challenge a record. In Cathcart v. Com., 37 Pa. 108, 110, it is stated, "The record, however, recites that they [the jurors] were 'all sworn or affirmed respectively to try, etc.' This of course raises the presumption that they were properly sworn or affirmed. . . . One paper book, indeed, contains part of

the opinion of the court below, upon the motion for a new trial, in which it is stated that the jury were sworn jointly and severally, instead of severally; but such an opinion is no part of the record, and it has often been held that the record cannot be corrected by it."

Where, however, a jury has been sworn and defendant participates in the trial, examining and cross-examining witnesses, a plea of not guilty is inherent in the act of defendant. It is not a case of waiver or presumption; his acts are tantamount to a plea: Garland v. State of Washington, 232 U. S. 642; Com. v. Saler, 84 Pa. Superior Ct. 281, 287. Defendant did not participate in the trial of the case. As we have stated, he sat as a spectator until the district attorney offered in evidence the statement of facts upon which he believed he was to be either acquitted or convicted.

While judgments should not be reversed for mere formal defects after a trial on the merits (Sauerman v. Weckerly, 17 S. & R. 117; State v. Heft, 155 Iowa 21; People v. Weeks, 165 Mich. 362; Garland v. State of Washington, supra), where there is no such trial, then a new trial should be granted.

It is said that these defects are inconsequential because appellant demurred to the evidence. *Historically and basically a "demurrer to the evidence" in a criminal case is part of a trial by jury.* A demurrer to evidence in a criminal case presupposes the presence of a duly constituted jury sworn to try the defendant demurring. The jury must be impaneled, an issue submitted, and a jury sworn to try that issue; at the conclusion of the Commonwealth's case a demurrer to the evidence may be presented and allowed. Since the case of Com. v. Parr, 5 W. & S. 345, the practice of demurring to the evidence by defendants in criminal trials has been recognized. In that case defendant demurred to the Commonwealth's evidence, the Commonwealth joined therein, the court below discharged the jury, and, after hearing the counsel on both sides, gave judgment for the defendant. On ap-

peal it was argued that it was error to have discharged the jury, but this court held that such action was proper, the court saying ". . . the court may, if they think fit, overrule the demurrer at once, and direct that the evidence shall be submitted to the jury for them to pass on the fact. In the case, however, under consideration, the court sanctioned the demurrer, and the Commonwealth joined in it, without any distinct admission being required from the defendant to be placed on the record of the fact, which the evidence demurred to conduce to prove." In Hutchison and Batchelder v. Com., 82 Pa. 472, wherein defendants demurred to the evidence, this court said: "The discharge of the jury is one of the errors assigned. In this we think the court below was right. It is true a jury are not only judges of the facts in a criminal case, but they are also judges of the law under the advice and instruction of the court. It was in the power of the defendants to require the jury to pass upon the whole case. But they waived this right by their demurrer to the evidence. By this act they threw the decision of both the law and the facts upon the court, and the discharge of the jury was entirely proper. They had no further functions to perform: Com. v. Parr," supra.

Demurrers to evidence in criminal practice are of very infrequent occurrence. In some states, where the question has arisen, the courts have denied altogether the right to demur in criminal causes, and although there are instances where such demurrers have been allowed, it is considered that the practice is not to be encouraged.

Demurrers in criminal cases have been found more frequently in appeals to the Superior Court.[4] A motion "to submit the bill" upon the conclusion of the Commonwealth's evidence cannot be used as a substitute for a de-

---

[4] Com. v. Williams, 71 Pa. Superior Ct. 311; Com. v. Ernesto, 93 Pa. Superior Ct. 339; Com. v. Spohn, 95 Pa. Superior Ct. 261; Com. v. Brown, 96 Pa. Superior Ct. 13; Com. v. Kolsky, 100 Pa. Superior Ct. 596. Com. v. Smith, 97 Pa. Superior Ct. 157, is a case having some aspects bearing directly on the case at bar.

murrer: Com. v. Sonis & Sonis, 81 Pa. Superior Ct. 205; nor can a motion in arrest of judgment: Com. v. Nathan, 93 Pa. Superior Ct. 193. In this case there was no participation by appellant in the selection of a jury to try the case; there was no opening to the jury outlining a case, no cross-examination or examination of witnesses for and on behalf of the Commonwealth or the defense. It is of no moment that the court said he was on trial. He must actually be placed on trial: Com. v. Kolsky, 100 Pa. Superior Ct. 596.

A part, and an absolutely necessary part, of jury trial is a sworn jury. This cannot be waived or dispensed with; without it there is no trial by jury. Another essential is a plea entered, but when defendant participates in the trial of a case fully, his action may be tantamount to a plea. There must then be the submission of evidence. It is following this a demurrer to the evidence may come in. The importance of adherence to forms in criminal procedure may not be entirely overlooked: Com. v. Brown, 138 Pa. 447. It promotes the orderly presentation of the case, guards against surprise and uncertainty, and insures the security of results reached in the trials of cases. The attempt to substitute new procedures ordinarily results in confusion and misunderstanding which permits needless litigation as well as the escape of the guilty. It is for the legislature to prescribe proper changes and not for the courts to do so.

Judgment reversed and a venire awarded.

DISSENTING OPINION BY MR. JUSTICE LINN:[5]

I dissent on two grounds: first, I cannot concur in the unwarranted assumption that the jury was not sworn;

---

[5] After this opinion was written, and apparently in consequence of it, changes were made in the majority opinion first proposed for adoption, but, as nothing has been added which would require a restatement of our reasons for differing from the majority, and as we do not wish to delay filing the judgment, we leave this opinion as originally submitted, without discussion of the changes referred to.

second, it is unimportant to the decision of this appeal whether the jury was sworn or not.

First. The majority opinion assumes that the jury was not sworn as to appellant, and then makes that assumption the ground for reversing the judgment. There is no affirmative evidence that the jury was not sworn; the fact appears to be assumed solely because the docket entries, certified from the docket kept in the main office of the clerk of the court of quarter sessions, are silent on the subject. In the absence of proof to the contrary, and there is none, the maxim omnia præsumuntur esse rite et solemnitur acta would be controlling: Springbrook Road, 64 Pa. 451, 453; Spear's Road, 4 Binn. 174; Schuylkill Falls' Road, 2 Binn. 250; cf. Girard Life Ins. Co. v. Farmers', etc., Bank, 57 Pa. 388, 393; In re Inter-County Bridge, 82 Pa. Superior Ct. 59, 62.

The assumption is unwarranted for several other reasons. (a) No counsel in the case (and counsel should know the fact) has said that the jury was not sworn. The point was taken by the majority of this court of its own accord. At the trial, Mr. Walter Biddle Saul represented the appellant. It seems certain that, if the jury had not been sworn, Mr. Saul would have raised the point in the trial court, and, failing there, it would have been raised in the Superior Court. It was not raised in either. The brief filed in the Superior Court shows that Mr. Charles E. Fox appeared for appellant, and the report of the case (112 Pa. Superior Ct. 215, 170 A. 401) shows that he made the oral argument. He had been district attorney of Philadelphia County and was thoroughly familiar, not only with the criminal law and procedure, but with what may be termed the clerical work of the court room to which reference shall be made in a moment under paragraph (b). Neither Mr. Fox nor Mr. Saul suggested, in their brief in the Superior Court, that the jury had not been sworn or that appellant had not had a constitutional trial. The principal contention there was that the learned

trial judge should not have found appellant guilty on the demurrer.

After the conviction was affirmed in the Superior Court, an application was presented here for the allowance of an appeal to this court. In paragraph 2 of the petition, appellant says "He pleaded 'Not Guilty' at the time of the trial, February 24, 1933, . . ." As I understand his petition, he urged that there was some misunderstanding on the part of his counsel and the trial judge as to the use to be made of, or the interpretation to be placed on, the statement of facts and other evidence, as a result of which, he contended, he had not had a fair trial, which misunderstanding, the petition alleged, resulted in "a miscarriage of justice and a denial of your petitioner's constitutional right to a fair trial." He also suggested for consideration the effect of filing the "agreed statement of facts."

Nowhere in the petition is it suggested that the jury was not sworn. An appeal was allowed, and consideration was limited to the constitutional question suggested in the petition, the order for the appeal specifying that it was allowed "on the sole question of whether the defendant's constitutional right to an impartial trial by jury was denied by the action of the trial judge in accepting the agreed statement of fact subject to any contradictions contained in the evidence produced in the trial of the co-defendant, and in entering judgment and pronouncing sentence upon his conclusions drawn from the statement and such other testimony." The statement of questions involved, in the brief filed in this court, refers to the use of the agreed statement of facts and to questions suggested by it; but there is not a word to the effect that the jury was not sworn as to appellant. In this court, appellant's case was presented by counsel who had not appeared for him in either of the other courts, which may account for the following statement, on page 13 of his brief: "At this point, attention is directed to the fact that there was no plea of 'Not Guilty' entered by the appel-

lant." He was doubtless misled by the certified docket which contains no entry on the subject. Perhaps, in consequence of that statement, though denied in the brief of the district attorney, the majority was also misled, for its opinion, as I understand it, treats the record as if no plea had been entered by appellant. How can such assumption be justified in the face of the fact that appellant himself, over his own signature and oath, states that he pleaded "Not Guilty" in a petition to this court presented by his counsel, one of whom acted for him and was familiar with what occurred at the trial?

(b) With such clear record proof of the fallacy of making assumptions from the silence of mere transcripts, I refer now to the steps taken in the quarter sessions from the act of swearing the jury to the act of certifying the docket entries for purposes of appeal. Of these matters we take judicial notice. The Court of Quarter Sessions in Philadelphia County conducts trials at the same time in a number of different court rooms, each of which has a staff of employees or clerks. The clerk of the court of quarter sessions is a public officer who is represented in each court room by subordinates. In the main office of the clerk, the docket is kept, from which the entries are certified on appeal. How do entries of what transpired in the court room get into the docket?

First. In every court room there is a crier whose duty it is to swear the jury, and, having done so, to deliver to a clerk the names of the jurors sworn. Second. This clerk keeps temporary minutes, on which he records the names of the jurors so sworn. Third. From those temporary minutes and from the indictment, another clerk enters the proceedings in the minute book of the court room. Fourth. From the same records the docket in the main office of the clerk of the court of quarter sessions is prepared by another clerk. Fifth. From that docket the entries are copied and certified by the same or some other clerk for purposes of appeal. It is obvious that any one or more of these persons may omit to make, or to copy, a

minute of an important act, though it actually took place. The error of assuming (as the majority opinion does) the infallibility of these clerks is exposed by the fact that one of them omitted to note that appellant pleaded, though he and his counsel, who were present and interested, assert that he did. Where such omission in the certified entries appears from our own records, no assumption against the Commonwealth can possibly be made: cf. In re Inter-County Bridge, supra; Girard Life Ins. Co. v. Farmers', etc., Bank, supra. The adoption of a rule supporting such assumption would doubtless invite efforts by un-scrupulous persons to procure the omission from minutes of essential acts, with, probably, disastrous results for those charged with the prosecution of crime, a reason sufficient to prevent adopting the rule.

Second. It is unimportant whether the jury was sworn or not. The demurrer to evidence in a criminal prosecu-tion is not in conflict with constitutional provision that "Trial by jury shall be as heretofore." The practice of demurring to evidence is older than the present Consti-tution, and in 1843, in Com. v. Parr, 5 W. & S. 345, was recognized as not inconsistent with trial by jury; in many recent cases the practice has been sustained. The question is not whether the members of this court at the trial would have reached the conclusion adopted by the learned trial judge and by the Superior Court; that ques-tion is not only not before us, but it was expressly ex-cluded from our consideration by restricting the scope of the appeal to the constitutional question stated above; the question I am considering is whether this appellant has been deprived of a constitutional right, even sup-posing that the jury was not sworn.

It is fundamental that a retrial will not be ordered for harmless error. It is part of the procedure of demurring to evidence, that (if allowed by the court and joined in by the Commonwealth) the jury must be discharged as to the party demurring: Com. v. Parr, supra; Hutchinson et al. v. Com., 82 Pa. 472, 479; see also Com. v. Sonis

et al., 81 Pa. Superior Ct. 205, 211; Com. v. Ernesto et al., 93 Pa. Superior Ct. 339, 341; Com. v. Spohn, 95 Pa. Superior Ct. 261, 262; Com. v. Brown, 96 Pa. Superior Ct. 13, 14; Com. v. Smith et al., 97 Pa. Superior Ct. 157, 160. Accordingly, and the record so states, the jury was discharged as to appellant. It was discharged, because he demurred; he initiated, as he had the right to do, the order of procedure, so that, whether the jury was sworn or not, is wholly immaterial, for the jury had nothing, and could have nothing, to do with his conviction. His demurrer took the jury out: Com. v. Kolsky, 100 Pa. Superior Ct. 596; Com. v. Williams, 71 Pa. Superior Ct. 311, 313. The determination to demur is not a waiver of jury trial, in the sense in which waiver was considered in Com. v. Hall, 291 Pa. 341, 140 A. 626, cited by the majority. That case did not touch, and certainly was not intended to abolish, the practice of demurring to evidence. It did not restrict or abolish what had been accepted procedure in criminal trials, as appears in Com. v. Shoemaker, 240 Pa. 255, 260, 87 A. 684, and Com. v. Deni, 317 Pa. 289, in which it is said that, even in a trial for first degree murder, a defendant may have a juror withdrawn without prejudicing "the Commonwealth's right to try the prisoner again on the indictment." The Commonwealth may appeal from a decision for the defendant on the demurrer: Com. v. Parr, supra; Com. v. Kolsky, supra. In Garland v. Washington, 232 U. S. 642, it appeared that the Supreme Court of the State of Washington had held that the failure to enter a plea in a prosecution for larceny "had deprived the accused of no substantial right, and that having failed to make objection upon that ground before trial it was waived and could not be subsequently taken." That position was affirmed by the Supreme Court of the United States. The rule was stated to be as follows (at page 645): "Due process of law, this court has held, does not require the State to adopt any particular form of procedure, so long as it appears that the accused has had sufficient notice of the

accusation and an adequate opportunity to defend himself in the prosecution: Rogers v. Peck, 199 U. S. 425, 435, and previous cases in this court there cited. Tried by this test it cannot for a moment be maintained that the want of formal arraignment deprived the accused of any substantial right or in any wise changed the course of trial to his disadvantage. All requirements of due process of law in criminal trials in a state, as laid down in the repeated decisions of this court, were fully met by the proceedings had against the accused in the trial court. The objection was merely a formal one, was not included in the general language in which the objection to the introduction of evidence was interposed before the trial, and was evidently reserved with a view to the use which is now made of it, in an attempt to gain a new trial for want of compliance with what in this case could have been no more than a mere formality." The court was asked to hold that the accused had not had a constitutional trial, on the authority of its earlier decision in Crain v. U. S., 162 U. S. 625, which supported the view of appellant. The court dealt with the contention and rejected it as follows (at page 646) : "Holding this view, notwithstanding our reluctance to overrule former decisions of this court, we now are constrained to hold that the technical enforcement of formal rights in criminal procedure sustained in the Crain Case is no longer required in the prosecution of offenses under present systems of law, and so far as that case is not in accord with the views herein expressed it is necessarily overruled." The same rule has been applied in this State: Com. v. Saler, 84 Pa. Superior Ct. 281, at page 287. Between trying for a felony an accused who has not been given an opportunity to plead, as in the Garland Case, and trying for a misdemeanor before a jury that has not been sworn, where the accused, by demurring, takes the jury out of the consideration of his case, there is no difference whatever in the quality of the facts constituting alleged failure of due process. It is certainly true that, in this Com-

monwealth, at this time, it is far more important for the protection of the public generally, as epitomized in the syllabus in the Garland Case, that "Technical objections, originating in the early period of English history, when the accused was entitled to but few rights, are passing away, and should not be allowed as to unimportant formalities where the rights of the accused have not been prejudiced." Hereafter, by the decision of the majority, in criminal appeals, an appellant can successfully complain of harmless error. Against this relaxation of rules in the trial of criminal cases, see Com. v. Dague, 302 Pa. 13, 16, 152 A. 839; Com. v. Flood, 302 Pa. 190, 195, 153 A. 152; Com. v. Simpson, 310 Pa. 380, 383.[6]

Third. The opinion of the majority contains a number of statements in which I cannot concur. Among them are the following: (1) It is said that "The agreed statement of facts was not presented to the court or jury." The record shows, as the opinion also states, that, at the close of the case for the Commonwealth, the statement was offered in evidence and presented to the court. How else could the court have considered it? As the jury was necessarily discharged from considering the evidence as to appellant (see Com. v. Parr, supra, and Hutchinson v. Com., supra), there was no occasion to present it to the jury. (2) It is said: "During the Robinson trial, Pent's counsel took no part in the examination or cross-examination of witnesses." As appears from what has already been stated, Robinson and Pent were on trial; it was not Robinson's trial alone; and the fact that "Pent's counsel

---

[6] In this case Mr. Justice SCHAFFER says: "The criminal law must move forward to meet the new conditions which confront organized society if its law-abiding members are to be protected in their personal and property rights. Whatever the rule may have been in past decades, we think now when there is such wide latitude allowed those convicted of crime to appeal and have their convictions reviewed, there should be a liberalizing of the attitude towards the Commonwealth, where the defendant has been convicted, and the question ruled against the Commonwealth, as here, is purely one of law."

took no part in the examination or cross-examination of witnesses" loses all force when taken with the statement of Pent's counsel that he would examine, "if there is any contradiction." The record shows the following: "The Court: You are here on trial, now. All I will do will be this. I am perfectly satisfied to have you two gentlemen, after the conclusion of the case, present any agreement as to facts that you shall have to offer. If you want to do that now, you may; but if you do it now, you must present it subject to any corrections or modifications that may be offered in the presentation of the Commonwealth's evidence. Mr. Saul: I am satisfied to do that, sir. The Court: Or also any additions. Mr. Saul: I am satisfied to do that, sir. The Court: All right; but we will not read the statement of facts to the jury at this time. Mr. Saul: If we demur to the evidence, I understand it then becomes a question for your Honor. The Court: Well, we won't read it to the jury at this time. Mr. Barr: That was not my intention. The Court: You are on trial now, Mr. Saul. It is not a mere formality. Mr. Saul: I understand. I understand the statement of facts has been filed subject to any correction that may develop. [The statement was not in fact put in until the close of the Commonwealth's case.] The Court: *You might want to ask some questions in view of what I have said.* Mr. Saul: *If there is any contradiction, yes."* (3) It is said, "The trial judge, in finding defendant guilty, took into consideration the facts developed in the Robinson Case, but refused to consider the agreed statement of facts." I think that is not in accord with the trial judge's statement, as follows: "The Court: The so-called agreement of facts or statement filed as supplementary and additional evidence in this case is irregular in form and substance; it is in large part merely argumentative, and in important particulars abounds in inferences and conclusions which are not justified by the uncontradicted facts in evidence. Of course, by such impertinent and nonevidential matters the Court is not and cannot be bound in deciding the de-

murrer before it. Considering all the evidence presented at the trial, both by the witnesses as well as that which is properly contained in the statement filed, and applying the rules governing the decision of demurrers under which conflicting evidence is resolved in favor of the Commonwealth, the Court is of opinion that the demurrer should be, and it accordingly is, overruled and judgment entered for the Commonwealth. Mr. Thompson: If your Honor please, I am in Mr. Walter Biddle Saul's office. Mr. Saul cannot be here to-day because he is at home ill. Regarding the Howard F. Pent and Robert E. Pent Case, we would like to keep the record as clear as we can, and we would ask your Honor for an exception to your Honor's rulings as to each indictment; also an exception to your Honor's disregarding the agreed statement of facts. . . . The Court: I won't give you that, because I did not disregard the statement of facts. I will give you an exception to what I did." (4) It is also said: "In this case there was no participation by appellant in the selection of a jury to try the case; there was no opening to the jury outlining a case, no cross-examination or examination of witnesses for and on behalf of the Commonwealth or the defense." As appears from the quotation made above, appellant's counsel said he might cross-examine, "if there is any contradiction." He was not deprived of any right. Nor can I understand that, if counsel choose not to participate "in the selection of a jury," but, on the other hand, to accept a jury already in the box, or to accept the jurors satisfactory to a party to be tried at the same time, such person has been deprived of any right; he was not obliged by anything appearing in the record to accept the jurors without examination, if he wished to examine. The record does not show that "there was no opening to the jury outlining a case," but, if appellant's counsel chose not to outline the case, he elected to do so for reasons by him deemed sufficient; he was not required by the court to remain silent, if, in fact, he did so. As I

understand the presentation of the evidence, he had the right to cross-examine, as he himself proposed.

We have dealt at length with the questions raised in the majority opinion, lest it be supposed, from our failure to answer them, that, in a proper case, they should be applied. In point of fact, however, they are not before us for consideration, since no assignment of error in any way refers to an alleged failure to plead or to swear the jury, if it was not sworn. The record before us does not disclose whether or not the effect of the alleged failure to plead was referred to in the assignments of error in the Superior Court. If it was, the failure to refer to it in the assignments in this court is an abandonment of that contention. If it was not, it cannot be raised for the first time in this court.

Mr. Justice SIMPSON concurred in this opinion.