Commonwealth *v*. Burdell, Appellant.

220

Argued April 19, 1954. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WOODSIDE and ERVIN, JJ. (WRIGHT, J., absent).

*E. O. Golden*, with him *Edward J. Steiner, Armand R. Cingolani, Alexander Unkovic* and *Kountz, Fry & Meyer*, for appellant.

*Charles J. Margiotti*, Special Prosecutor, with him *V. J. Rich*, Assistant and *Clark H. Painter*, District Attorney, for appellee.

OPINION BY RHODES, P. J., August 30, 1954:

Appellant, Fred Burdell, has appealed from conviction and sentence on bill of indictment charging armed robbery, at No. 2, June Term, 1952, in the Court of Oyer and Terminer of Butler County. Appellant was sentenced to undergo imprisonment in the Western State Penitentiary for a term of not less than four years nor more than eight years, to be sent, in the first instance, to the Western Correctional Diagnostic and Classification Center, at Pittsburgh. Appellant was also indicted for aggravated assault and battery, at No. 23, June Term, 1952, in the Court of Quarter Sessions of Butler County. He was tried on both bills before the same jury which rendered verdicts of guilty. Sentence on bill No. 23 was suspended, but appellant has nevertheless appealed. In the absence of a judgment this conviction is not necessarily reviewable. *Com. v. Kimmel,* 172 Pa. Superior Ct. 76, 81, 92 A. 2d 247.

Motions for new trial were refused by President Judge GRAFF of the Thirty-third Judicial District, specially presiding, who was the trial judge.

The court below fully considered the many reasons advanced for a new trial. Appellant's several contentions that the court erred in refusing his motions for a new trial will be considered as embraced in the statement of questions involved.

The Commonwealth established that on the afternoon of March 14, 1952, at approximately two o'clock, the home of Craig Saul, in the City of Butler, was entered and over $100,000 feloniously taken. Entry was gained to the house under the pretext of delivering a box to Mr. Saul. Two men who were carrying the box entered first; they were armed. Mrs. Saul was forced into a chair and then a third man came in the house. The latter went through all the rooms of the house,

including the cellar. In the meantime, one of the men removed the telephone and Mrs. Saul was taken to the upstairs hall where she was required to sit on the stairs with her feet on the landing. She was held there throughout the robbery by the first man who had entered the house, with the help at times of the second man who had entered. Mrs. Saul suffered considerable injury at the hands of these armed men. Mrs. Saul was thus restrained for about a quarter of an hour. During this time a safe, which was located in the dining room on the first floor, was opened and approximately $100,000 in cash and bonds belonging to the Sauls was taken therefrom. Then the three men left the house. Mrs. Saul followed and observed them getting into the back seat of a large gray car with dark cloth covering the glass on the inside.

Appellant was identified by Mrs. Saul as being the person who first entered the house, and who was with her during the entire time she was held in custody by the perpetrators of the robbery. Mrs. Saul partially identified the other participants.

(1) A primary contention of appellant is that the trial judge erred in admitting evidence of a crime committed in Allegheny County two days before the entry of the Saul home. Evidence of the extortion of $2,600 from Craig Saul by appellant in Allegheny County was admitted for the purpose of showing a course of conduct or plan or scheme on the part of appellant and others to feloniously take from Craig Saul his personal property, as well as to establish the identity of appellant. Craig Saul testified that on the morning of March 12, 1952, he went to Pittsburgh with three individuals, Jack Vergili, Willie Mendocini, and Sam Fratta. They registered at the Roosevelt Hotel. A party was arranged by Mendocini. The group remained at the hotel during that day; and at ten o'clock in the

evening Saul wanted to go home and called his brother, who came to the hotel and directed the other three men to take him to his home in Butler. On the pretext of taking Saul to Butler the group drove toward Rankin, Allegheny County, where appellant, in his police uniform, stopped Saul's Cadillac automobile, which was being operated by Mendocini, and accused them of driving through a stop sign and of being engaged in the numbers business. Appellant indicated that he would confiscate Saul's automobile unless he was "fixed." Saul offered appellant $100. The sum of $2,600 was finally extorted from Saul; this was all the money that he had in his wallet at the time.

The Commonwealth also showed that Vergili and Fratta were friends of Saul, who had not previously met appellant, and that Mendocini and appellant had been friends from childhood. The jury could believe that, on the same evening the group was at the Roosevelt Hotel, Mendocini made a telephone call from the hotel to appellant at his Braddock home. The testimony further disclosed that Saul's companions knew that he was in the habit of having large sums of money on his person and in a safe in his home.

We agree with the court below that the offenses were so closely connected that the evidence of the one committed in Allegheny County was properly received in the trial of appellant in Butler County. Not only did the Allegheny County occurrence tend to prove a design or plan to rob Saul, but it also had a logical bearing upon the identity of appellant in the robbery at the Saul home on March 14, 1952. It may be said that the two occurrences constituted closely connected crimes for a common purpose. *Com. v. Ransom,* 169 Pa. Superior Ct. 306, 314, 82 A. 2d 547. See, also, *Com. v. Fugmann,* 330 Pa. 4, 20, 198 A. 99; *Com. v. Chalfa,* 313 Pa. 175, 178, 169 A. 564.

(2) Did the trial judge err in limiting the number of peremptory challenges to ten?

Under section 1 of the Act of March 6, 1901, P. L. 16, as amended, 19 PS §811, in the trial of misdemeanors and felonies, triable exclusively in the courts of oyer and terminer and general jail delivery, a defendant is entitled to twenty peremptory challenges. At appellant's trial a stipulation of counsel was entered into as follows:

"By Mr. Painter: It is stipulated by and between counsel for the Commonwealth and counsel for the defendant, Fred Burdell, that the challenges, peremptory challenges, in this case, shall be limited to ten for each side.

"By Mr. Cingolani: Counsel for the defendant agrees."

Appellant now contends that the trial judge erred in permitting such a stipulation to be entered and in limiting the number of peremptory challenges accordingly.

In *Com. v. Antico,* 146 Pa. Superior Ct. 293, 314, 22 A. 2d 204, 215, this Court said: "There is no *constitutional* right to *any* peremptory challenges. It is legislative in origin and is subject to change or even abrogation by the legislature, so long as it does not deny the accused a trial by jury 'as heretofore.' Defendants were entitled to a trial by a fair and impartial jury, but not to a trial by any particular juror or jurors." Appellant could waive such a statutory right, and appellant was bound by the action of his trial counsel in this respect. See *Com. v. McMurray,* 198 Pa. 51, 60, 47 A. 952.

(3) Was it reversible error to admit in evidence a tape recording after appellant's counsel, with appellant's approval, withdrew all objections?

While appellant was incarcerated in the state police barracks at Butler, a tape recording was made of conversations between appellant and Vergili, one of the men allegedly involved in the robbery for which appellant was being tried. They occupied adjoining cells. On cross-examination appellant was asked whether he had made certain statements to Vergili. He denied making any of the statements concerning which he was asked. The Commonwealth, for the purpose of contradiction of appellant, offered a tape recording made when he and Vergili were confined in the police barracks. Appellant's counsel objected to the admission of the tape recording. The trial judge ruled that those portions of the tape recording which related to material matters about which appellant had been questioned were admissible.

Appellant's counsel was furnished with a copy of the transcript of the tape recording. Thereafter appellant's counsel stated upon the record: "Having read the statement, a copy of which was furnished by Commonwealth's counsel, having discussed the matter with the defendant, and he having refreshed his recollection, therefore admits the statement, and withdraws all objection to the admission of the entire transcript."

The entire conversation between appellant and Vergili was then admitted in evidence and the recording played to the jury. An extensive argument is now presented on appeal by counsel for appellant to the effect that the recording was inadmissible for numerous reasons, and that failure to exclude it on the court's own motion was fundamental error. There is no question about the admissibility of this type of evidence if relevant and material. *Com. v. Clark,* 123 Pa. Superior Ct. 277, 187 A. 237. The court below in its opinion said: "There were parts of the conversation which were relevant and material. A reading of the entire record

indicates that parts of it were favorable to the defendant, and apparently this is what motivated the withdrawal of all objection." Having stipulated that the entire conversation be placed in evidence, the reasons advanced to support appellant's contention are without merit.

(4) Did the trial judge err in admitting in evidence a photograph of appellant, there being no objection by appellant's counsel?

Mrs. Saul identified appellant at the state barracks from a Bertillon photograph which was introduced as Commonwealth's Exhibit 4 without any objection. Appellant admitted that it was his photograph, and, over objection on the part of the Commonwealth, attempted to explain the circumstances under which it was taken. Again appellant attempts to argue the admissibility of an item of evidence to which no objection was made at the trial. See *Com. v. Woloszchuk,* 133 Pa. Superior Ct. 470, 3 A. 2d 10. It is not necessary for us to decide the question of admissibility, but, in any event, as said in *Com. v. Truitt,* 369 Pa. 72, 80, 85 A. 2d 425, 429: "We agree that counsel may not permit the admission of irrelevant testimony, without objection, and if the case should be decided adversely, then to secure a new trial upon the ground of fundamental error."

(5) In directing correction of clerical errors or omissions in the record, did the court below commit reversible error?

Appellant was indicted for armed robbery in the Court of Oyer and Terminer at No. 2, June Term, 1952, and he was tried in that court as shown by the docket entries printed by appellant as part of the record on appeal, and by the stipulation relative to twenty peremptory challenges. The indictment charging aggravated assault and battery at No. 23, June Term, 1952, was in the Court of Quarter Sessions. No question

was raised at the trial as to the jurisdiction of the trial court.

Appellant now complains that the record did not originally show a certification of the indictment for aggravated assault and battery to the Court of Oyer and Terminer, and that the allowance of the certification nunc pro tunc was error. He also complains that the record did not originally set forth that appellant entered a plea (although he signed a plea on the back of each indictment), that the jury was sworn, that appellant was present in court during the trial, and that appellant was present at the rendition of the verdict. He further complains that the testimony was only captioned in the Court of Quarter Sessions at No. 23, June Term, 1952. Appellant's argument is to the effect that the correction of the record at the direction of the trial court after appropriate proceedings so as to conform to the facts constitutes reversible error.

The same individual was clerk of the Court of Oyer and Terminer and of the Court of Quarter Sessions. Owing to the mixed system of criminal proceedings in this Commonwealth, clerical errors and omissions frequently occur which, under a single system of criminal jurisdiction, would not happen. In the present case the court below did no more than it could rightly do, and what it did infringes no right or substantial interest of appellant. After a trial on the merits a judgment will not be reversed for mere formal defects. *Com. v. Robinson*, 317 Pa. 321, 334, 176 A. 908.

The certification nunc pro tunc of the indictment in the Court of Quarter Sessions for aggravated assault and battery to the Court of Oyer and Terminer for trial was permissible, and the failure to certify before trial was at most a formal defect which could be subsequently corrected. *Com. v. Eberhardt*, 164 Pa. Superior Ct. 591, 599, 67 A. 2d 613. Appellant has not

shown or suggested that he suffered any prejudice in his defense on the merits, or that a failure of justice has resulted by reason of a lack of any formal certification to the Court of Oyer and Terminer. *Com. v. Torr,* 111 Pa. Superior Ct. 178, 182, 169 A. 238. The other defects in the record were at most clerical errors or omissions, and it is well settled that the trial judge has the inherent power to remedy any inadvertence or omission in order that the record may conform to the actual facts. *Com. ex rel. Paylor v. Claudy,* 173 Pa. Superior Ct. 336, 340, 98 A. 2d 468; *Com. v. Mount,* 172 Pa. Superior Ct. 258, 93 A. 2d 887; *Com. v. Meyer,* 169 Pa. Superior Ct. 40, 82 A. 2d 298. Moreover, it is the duty of a judge to see and certify that the record is absolute verity according to the facts as they actually took place. *Conner Appeal,* 175 Pa. Superior Ct. 382, 104 A. 2d 758. As said in *Com. v. Silcox,* 161 Pa. 484, 496, 29 A. 105, 106: "We think the amendment was clearly within and a proper exercise of the power of the court. It simply supplied a clerical omission and placed the record in this particular in harmony with the fact. It excluded the possibility of an inference from the record opposed to the truth of the case, but it did not deprive the defendant of any substantial right. What right had he to require that a defect in the record arising from an oversight of the clerk in keeping it and which left room for an inference hostile to the undisputed facts, should be perpetuated for his benefit? . . . There was nothing in the nature or character of the defect or in the circumstances of the case which placed it beyond the power of amendment."

Appellant does not assert that any correction ordered by the court was not in conformity with the facts. Appellant was tried in the Court of Oyer and Terminer, and he received a fair and impartial trial. There is no basis for complaint as to the indictment for ag-

gravated assault and battery as sentence was suspended on that conviction.

(6) Will this Court consider alleged errors in the opinion of the court below refusing new trial?

Appellant in his argument refers to a number of statements made in the opinion of the court below which he maintains are not in conformity with the testimony. We find no material inaccuracy in the court's opinion. Moreover, the opinion refusing a new trial is not part of the record. *Com. v. Robinson*, supra, 317 Pa. 321, 333, 176 A. 908. Judgment of sentence was in conformity with the record. See *Wargovich v. Metropolitan Life Insurance Co.*, 136 Pa. Superior Ct. 421, 431, 7 A. 2d 568; *Mitchell v. Marinelli*, 356 Pa. 517, 521, 52 A. 2d 203.

(7) Was the verdict against the weight of the evidence?

In this connection appellant argues that the testimony of Mrs. Saul as to the identification of the appellant was contradictory and was contradicted by other witnesses; that such identification was refuted by her own testimony. Mrs. Saul testified that appellant guarded her during the robbery and was in close proximity to her for about fifteen minutes. At the trial Mrs. Saul positively identified appellant. "Where a witness states positively and without qualification that in his opinion the defendant is the man, that is sufficient proof": *Com. v. Sharpe*, 138 Pa. Superior Ct. 156, 159, 10 A. 2d 120, 121. Consequently, the probative weight of the testimony of identification was, in the first instance, exclusively for the jury. Her testimony was sufficient, if believed by the jury, to establish the identity of appellant as a perpetrator of the crime with which he was charged. The facts to be found from the evidence and the credibility of the witnesses were entirely for the jury. *Com. v. Walker*, 283

Pa. 468, 474, 129 A. 453. The subject was adequately covered by the charge of the court, and in addition thereto appellant was fully protected by the affirmance of his points for charge as to identity.

A motion for a new trial on the ground that the verdict is against the weight of the evidence is within the sound discretion of the trial court. *Com. v. Elliott*, 292 Pa. 16, 24, 140 A. 537. In addition to the testimony of Mrs. Saul as to the identity of appellant, there was other testimony which tended to establish identity. The Commonwealth presented ample evidence, which the jury apparently believed, to support the verdict of guilty. We find no abuse of discretion in the action of the court below in refusing the motions for new trial, and no reversible error has been shown which would entitle appellant to a new trial.

Judgment of sentence is affirmed; and it is ordered that defendant appear in the court below at such time as he may be there called and that he be committed by that court until he shall have complied with his sentence or any part of it which had not been served at the time his appeal was made a supersedeas.