**COMMONWEALTH of Pennsylvania,
Appellee,**

v.

**George CAMERON, Appellant.**

Superior Court of Pennsylvania.

Argued March 13, 2001.

Filed July 16, 2001.

Harry J. Cancelmi, Waynesburg, for appellant.

Linda Chambers, Assistant District Attorney, Waynesburg, for Com., appellee.

BEFORE: ORIE MELVIN, TODD, and KELLY, JJ.

TODD, J.

¶1 George Cameron appeals the judgment of sentence of March 30, 2000 of life imprisonment without parole entered following his conviction of first-degree murder.[1] Because we find that the trial court erred in categorically denying the defense's request to play an audiotape of Cameron's confession for the jury's consideration as evidence as to its voluntariness, we affirm the judgment of sentence, but remand for a hearing on the audiotape's relevance.

¶2 The record reveals the following factual background necessary for our resolution of this appeal: Cameron was arrested on August 5, 1999 for the murder of David Cumberledge. Cumberledge apparently had been seeing Cameron's estranged wife, Lisa Cameron. According to testimony presented at trial, Cameron had threatened to kill Cumberledge during at least two separate confrontations with him in the days before the killing. On the day of the homicide, Cameron was observed by at least two witnesses carrying two hunting knives on his person. Aware that Cameron wished to see her, Ms. Cameron had implored Cumberledge to stay away from her. Around midnight on August 4, Cameron was at his wife's apartment, and according to his wife, he had been drinking. Following a confrontation with her, as Cameron was leaving her apartment he found Cumberledge in the hallway. Cameron suggested they fight and the two disappeared into the hallway outside of Ms. Cameron's view. Ms. Cameron heard struggling, then heard Cumberledge scream, and she "heard" stabbing, although she could not see what was going on. As she went out on her back porch to call for help, she saw Cameron run past holding a knife. She saw no one else in the apartment building during this time. Cumberledge, bloodied, stumbled back into the apartment with approximately 16 stabbing and cutting wounds,[2] and soon died.

¶3 A witness later observed Cameron, shirtless, jumping out of the weeds on a nearby street. A blood-stained shirt was later recovered in that area. Also, a knife with the victim's blood on it was discovered in a nearby dumpster. Cameron was apprehended about an hour later, in the early hours of August 5, hiding under the trailer of a friend. Cameron was wearing socks which were soaked with a large amount of the victim's blood. Also, what appeared to be a suicide note was found on him. He smelled of alcohol and apparently had ingested a large quantity of a prescription tranquilizer, Librium, which was found to be missing from the trailer.

¶4 Cameron was taken to the Greene County Jail, but the police and the district attorney declined to interview him at that time because they concluded he was under the influence of alcohol and/or drugs and in a "stupor." Several witnesses testified as to his impaired condition at the time of his arrest. After his arrest, when an officer asked another officer who had "expired," Cameron blurted out that it was Cumberledge and "that is what happens when someone pulls a knife on me." (N.T. Trial, 3/28/00, at 70, 95.) At his arraignment at 8:00 a.m. that morning, Cameron was observed sitting and lying on the floor.

¶5 On August 6, around 4:00 p.m., the police and the district attorney concluded

---

1. 18 Pa.C.S.A. § 2502.

2. Dr. Leon Rozin, the forensic pathologist who performed the autopsy on the victim, testified to the victim's multiple stab or incision wounds: eight on the face and head; five on the chest, two of which perforated the chest cavity and damaged the right lung; one on the left forearm; and one on the left thigh. (N.T., 3/28/00, at 430.)

that Cameron was capable of being interviewed. He was advised of his *Miranda* rights and, after waiving his right to counsel, he consented to an interview by the district attorney and Lieutenant Glenn Bates, and gave a statement, ultimately confessing to the crime. This interview was recorded on audiotape.

¶ 6 Prior to trial, the trial court denied Cameron's motion to suppress the statement. At trial, the Commonwealth offered a transcript of the confession into evidence. The trial court overruled Cameron's objection to the admission, but ruled that the transcript would not go to the jury and that such evidence would have to be elicited from the Commonwealth's witnesses.[3] Thereafter, Lieutenant Bates testified to the substance of Cameron's statement as follows:

He gave several statements, at first he denied he had anything to do with it, he indicated that possibly there was a third person in the hallway with David Cumberledge. During the interview he was asked if he had a knife with him at first he indicated that he did not stab David Cumberledge that night that it was the third person in the hallway that did the crime and left. Then he changed his story during the interview and indicated he did stab David E. Cumberledge and that it could have been self defense, the defendant changed his story and did acknowledge stabbing David Cumberledge.

(N.T. Trial, 3/28/00, at 120–21.) Later, in the presentation of the defense's case, defense counsel sought to have the tape recording played to the jury as evidence of his impaired condition at the time of the interview. The trial court sustained the Commonwealth's objection to this request "at this point in time at least unless it later becomes relevant," but allowed the tape to be entered into the record. (N.T. Trial, 3/28/00, at 492–93.) The tape was never played to the jury.

¶ 7 The jury was charged on the crimes of first and third-degree murder and voluntary and involuntary manslaughter. On March 30, 2000, the jury found Cameron guilty of first-degree murder and thereafter he was sentenced to life imprisonment without parole. Following the denial of his post-sentence motions, Cameron filed this timely appeal. On appeal, Cameron asks:

Did the trial judge, who failed to listen to or to read the transcript of a defendant's statement, abuse his discretion or err in sustaining Commonwealth's objection to the introduction of the entire audiotape statement after the Commonwealth introduced a brief three-sentence paraphrase of the statement in its case in chief, especially where the statement was relevant to the issue of the (1) voluntariness of confession, (2) accuracy and completeness of the policeman's summary, and (3) the defendant's state of mind in a criminal homicide prosecution?

(Appellant's Brief, p. 4.)

¶ 8 This Court has consistently held that "[a] trial court's rulings on evidentiary questions are controlled by the discretion of the trial court and [an appellate] [c]ourt will reverse only for clear abuse of that discretion." *Commonwealth v. Viera*, 442 Pa.Super. 348, 659 A.2d 1024, 1028 (1995) (citations omitted). It is well-

---

3. Specifically, the trial court ruled:
   The objection is overruled, the Defendant has a right to present relevant testimony. I will admit Commonwealth's Exhibit 5 into the record, into evidence at this point in time. The transcript will not be sent to the jury, we will allow questions on the transcript but the evidence must come from the witnesses.
   (N.T. Trial, 3/28/00, at 119–120.)

settled that "[a]n abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence or the record." *Commonwealth v. Kubiac,* 379 Pa.Super. 402, 550 A.2d 219, 223 (1988).

¶ 9 Cameron first argues that the trial court erred in refusing his request to play the audiotape of the statement, given that the Commonwealth had introduced a summary of the statement through the testimony of Lieutenant Bates. His argument is, essentially, that since the Commonwealth had introduced part of the statement, then he was entitled to have the entire statement introduced. We disagree.

██  ¶ 10 Had the Commonwealth introduced portions of the transcript of his confession, then our conclusion would be different. Rather, without referring to the transcript, the officer testified as to his recollection of Cameron's confession to the murder. Therefore, we cannot agree that this testimony entitled the defense to introduce the entire audiotaped statement. Cameron was free to cross-examine Lieutenant Bates as to the substance of the confession and test his observations. Further, Cameron has not suggested that anything to which Lieutenant Bates testified vis-a-vis the confession was at all inaccurate. For these reasons, the cases cited by Cameron either support our conclusion or are inapposite to his claim.[4] As a result, we reject this contention.

¶ 11 Cameron next argues that, as the voluntariness of the confession was an issue for the jury's consideration, the trial court erred in failing to allow him to intro-

---

4. *See Rodgers v. Fleming,* 325 Pa. 228, 188 A. 861 (1937) (for purposes of proving party's admission, cannot admit only part of pleading if result is to give erroneous impression of· what party admits); *Weaver v. Welsh,* 325 Pa. 571, 575, 191 A. 3, 6 (1937) (approving jury instructions that stated "where a party undertakes to prove an admission of another party, he must give the whole admission, and if a portion of it serves the party who made the admission, he must not leave it out; the whole must be for the consideration of the jury") *overruled on other grounds, Estate of Grossman,* 486 Pa. 460, 406 A.2d 726 (1979); *Jones v. Spidle,* 446 Pa. 103, 286 A.2d 366 (1971) (citing *Weaver* for proposition that party against whom admission is entered by opponent is entitled to have entirety of admission entered into evidence, including any portion that may favor party); *Commonwealth v. Burdell,* 176 Pa.Super. 219, 107 A.2d 739 (1954) (entire conversation between defendant and jailmate properly entered because defense withdrew objection to admission), *rev'd on other grounds,* 380 Pa. 43, 110 A.2d 193 (1955); *Commonwealth v. Brandler,* 81 Pa.Super. 585 (1923) (while written confession "should have been admitted or rejected as a whole," defendant's objection to partial admission unfounded where entire confession later admitted); *Commonwealth v. Hipple,* 333 Pa. 33, 3 A.2d 353 (1939) (entire confession was admissible, despite the defendant's objection, even though part of it concerned an unrelated crime); *Commonwealth v. Jones,* 341 Pa. 541, 19 A.2d 389 (1941) (same, citing *Hipple* ); *Commonwealth v. McCabe,* 345 Pa.Super. 495, 498 A.2d 933 (1985) (defendant opened door to Commonwealth's questions on re-direct about defendant's statement by asking police officer whether defendant denied crime); *Commonwealth v. Smith,* 374 Pa. 220, 97 A.2d 25 (1953) (officer's testimony identifying elements of confession did not violate best evidence rule and entire written confession was entered into evidence at any rate); *Commonwealth v. Cruz,* 489 Pa. 559, 414 .A.2d 1032 (1980) (officer's entire prior consistent statement was properly introduced for rehabilitation purposes); *Catina v. Maree,* 272 Pa.Super. 247, 415 A.2d 413 (1979) (entire statement read into record), *rev'd on other grounds,* 498 Pa. 443, 447 A.2d 228 (1982); *Commonwealth v. Marino,* 213 Pa.Super. 88, 245 A.2d 868 (1968) (statement properly admitted as evidence of prior consistent statement), *aff'd,* 435 Pa. 245, 255 A.2d 911 (1969).

duce the taped confession as evidence as to its voluntariness. This would appear to be a matter of first impression for this Court, as we have located no cases, nor does Cameron or the trial court cite to any, which address a trial court's denial of a defendant's request to admit a taped confession on the issue of its voluntariness.

■■■ ¶ 12 Despite a pretrial ruling that a confession is voluntary, as occurred here, a criminal defendant nonetheless is entitled to a second opportunity to test the voluntariness of his statement by introducing evidence at trial relating to voluntariness and have the jury consider the question. *Commonwealth v. Cunningham*, 471 Pa. 577, 590–91, 370 A.2d 1172, 1179 (1977); *see also* Pa.R.Crim.P. 581(J).[5] In this situation, the jury may not assess the evidentiary weight of the confession "until it first makes an independent finding that the confession was voluntarily made." *Id.* at 591, 370 A.2d at 1179.[6] Nevertheless, the trial court still has the responsibility to determine the relevance and admissibility of any voluntariness evidence proffered by the defense. *Id.* at 591–92, 370 A.2d at 1179.

¶ 13 Cameron did not appeal the pretrial ruling that the confession was voluntary and admissible. Thus, the issue before us is not the "admissibility" of the confession—i.e., whether the jury properly heard evidence of Cameron's confession.[7] To the contrary, this case presents the unique situation where *the defendant* sought to have the jury hear the taped confession. The issue, therefore, is whether the jury was properly prohibited from hearing the tape which Cameron asserts reflects on the voluntariness of his confession.

¶ 14 Once the Commonwealth introduced Cameron's confession through the testimony of Lieutenant Bates, Cameron was entitled to present to the jury evidence rebutting the voluntariness of the confession subject, of course, to relevancy and other evidentiary rulings of the trial court. *Cunningham*, 471 Pa. at 591–92, 370 A.2d at 1179. In fact, the defense sought to establish Cameron's impaired state at arrest and after the confession through the testimony of several witnesses.

■■■ ¶ 15 It is well-established that, in order to determine voluntariness, the totality of the circumstances must be considered:

> Although there is no single litmus-paper test for determining the voluntariness of a confession, it must be established that the decision to speak was a product of a free and unconstrained choice of its

---

5. Formerly Rule 323. Effective April 1, 2001, this rule was renumbered as Rule 581.

6. This procedure has been explained as follows:

   The rights of a defendant in this area are, in our opinion, adequately protected by Rule 323 [now Rule 581] of the Pennsylvania Rules of Criminal Procedure, 19 P.S. (1975 Pamphlet), relating to the suppression of evidence. That rule is modelled after the so-called Massachusetts or 'humane' rule approved by the Supreme Court of the United States in *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). It provides that prior to trial, upon motion of the defendant to suppress evidence alleged-

   ly obtained unconstitutionally, a hearing shall be held to determine the admissibility of the challenged evidence. If the evidence is found to be admissible, the defendant is foreclosed only from challenging its admissibility at trial; he may still contest the validity of such evidence notwithstanding its admission. For example, in the case of a confession, the challenge to it on involuntariness grounds may be renewed at trial. *Commonwealth v. Green*, 464 Pa. 557, 561–62, 347 A.2d 682, 684 (1975) (citations omitted).

7. For this reason, we are not confronted with the issue of whether the trial court may have erred in ruling the confession admissible in the first instance.

maker ... All attending circumstances must be considered in this determination. These include the duration and methods of interrogation; the length of delay between arrest and arraignment; the conditions of detainment; the attitudes of the police toward defendant; defendant's physical and psychological state; and all other conditions present which may serve to drain one's power of resistance to suggestion or to undermine one's self-determination.

*Commonwealth v. Meachum*, 711 A.2d 1029, 1034 (Pa.Super.1998) (quoting *Commonwealth v. Hughes*, 521 Pa. 423, 442, 555 A.2d 1264, 1273 (1989)). The demeanor of the defendant, including the sound of his voice, as is revealed on the audiotape is clearly an "attending circumstance" that bears on the voluntariness of his confession. *See, e.g., Commonwealth v. Nester*, 551 Pa. 157, 167, 709 A.2d 879, 884 (1998) (among other things, that defendant's "speech was coherent" was consideration in assessing voluntariness of confession); *Commonwealth v. Williams*, 504 Pa. 511, 522, 475 A.2d 1283, 1288 (1984) (in assessing voluntariness of confession, noting that "there was nothing unusual about [defendant's] manner of speech"); *Commonwealth v. Vitzen*, 425 Pa. 574, 577, 229 A.2d 746, 748 (1967) (despite signs of defendant's intoxication, confession found voluntary where, among other things, his speech was coherent); *United States v. Waxman*, 572 F.Supp. 1136, 1152–53 (E.D.Pa.1983) (Trial judge noted that "[h]aving listened to the recording of the confession I conclude defendant's tone of voice was strong and conversational, his responses clear and coherent, his memory for detail remarkable, and he was not in fear."), *aff'd* 745 F.2d 49 (3d Cir.1984); *cf. Carter v. State*, 730 N.E.2d 155 (Ind.2000) (among other factors, in concluding that confession was voluntary, judge compared defendant's voice on audiotape to his testimony at hearing).

¶ 16 Nonetheless, the trial court denied Cameron's request to play the audiotape, and later explained its decision as follows:

> This court ruled, pursuant to Pennsylvania law, that the tape could be played to the jury if the defendant testified that he did not make a voluntary waiver of his rights under *Miranda*, or that he was not cognizant of the fact that he was making an admission to the investigating officer. The defendant chose to exercise his constitutional right not to testify at the time of trial. Without his testimony to place into issue the admission made to the investigating officer, the audiotape is not relevant and therefore could not have been properly presented to the jury by the defendant. Had the court ruled in the defendant's favor, this would have given the defendant the opportunity to place his statements on record without being subject to cross examination, an exercise contrary to Pennsylvania law.

(Trial Court Opinion, 5/23/00, at 3–4.) We cannot agree with this conclusion. We can find no authority, and the trial court cites none, which dictates that the defendant must place the voluntariness of his confession at issue at trial through his own testimony, as the trial court seems to imply. Regardless of whether or not Cameron testified, his vocal demeanor may have been relevant to the jury's determination of whether or not his confession was voluntary. The trial court, in effect, penalized Cameron for the exercise of his constitutional right not to testify by circumscribing the evidence he could present on this point. We cannot agree with the trial court that, simply because the proffered evidence consisted of the defendant's voice, it was categorically inadmissible because he did not testify.

¶ 17 It is undisputed that the trial court did not listen to the tape. Rather, as the above excerpt from its opinion makes clear, the court ruled that the audiotape was categorically inadmissible without the defendant's testimony. We conclude that this was an abuse of discretion and that exclusion on this basis was error. The decision of our Supreme Court in *Commonwealth v. Myers*, 472 Pa. 200, 371 A.2d 1279 (1977), supports this conclusion. There, the defendant claimed his confession was involuntary due to the Commonwealth's post-confession delay in arraigning him and he sought to present evidence on this point to the jury. The trial judge restricted defendant's evidence on voluntariness to the time period between his arrest and his confession. Our Supreme Court held that this restriction was improper.[8] In reversing the defendant's conviction, the Court said: "We cannot interfere with the jury's province to determine voluntariness based upon all factors because we do not know what facts would influence the outcome of their deliberation on that issue." *Id.* at 216, 371 A.2d at 1287. Likewise, in the instant case, we conclude the trial judge erred in categorically restricting the scope of Cameron's presentation of evidence on the voluntariness issue, without first reviewing the tape and assessing its relevance.

¶ 18 Further, we cannot conclude that this error was harmless. Concededly, the evidence in support of Cameron's involvement in this crime is overwhelming. His estranged wife testified as to the fight between Cameron and Cumberledge. She heard the struggle and the stabbing, and she saw Cameron run away with a knife. Cameron was later apprehended with the victim's blood on his socks. Further, evidence that the crime was premeditated is substantial. Witnesses testified as to Cameron's threats to kill Cumberledge and that he was, on the day of the murder, carrying two knives with him. Finally, the victim's multiple stab and incision wounds are arguably inconsistent with a self-defense claim by Cameron.

¶ 19 Nevertheless, we find that the audiotape raises serious concerns about Cameron's condition at the time of his confession. Had the jury heard the audiotape of Cameron's confession, it could have concluded that the confession was involuntarily given and, as a result, it would have been obliged to ignore or discount that evidence. Under these circumstances, we cannot be certain that the jury would have convicted Cameron of first-degree murder, and would not have opted instead to convict on a lesser offense. For these reasons, we cannot conclude that the trial court's categorical exclusion of the audiotape from the jury was harmless.

¶ 20 As a result, we affirm Cameron's judgment of sentence, but remand this case for a hearing on the relevance of the audiotape when compared to Cameron's normal speaking voice, as the ultimate import of the audiotape can only be assessed by such comparison. The trial court, in the exercise of its sound discretion, will need to devise an appropriate method for making this comparison, whether by allowing the defense to offer a sample of the Cameron's normal voice, or otherwise. If, on remand, the trial court concludes that the audiotape is relevant to a jury's consideration of the voluntariness of Cameron's confession, his sentence should be vacated and a new trial granted. If the trial court

---

**8.** The Court noted that a delay post-confession is considered relevant to assessing the voluntariness of a confession as it reflects upon the general respect that the police show to procedural safeguards. *Id.* at 216, 371 A.2d at 1286–87 (quoting *Commonwealth ex rel. Butler v. Rundle*, 429 Pa. 141, 155, 239 A.2d 426, 433 (1968)).

on remand finds the audiotape irrelevant, however, Cameron shall have a right to appeal this finding within 30 days of the entry of the trial court's order. *See Commonwealth v. Pearson*, 454 Pa.Super. 313, 685 A.2d 551, 559 (1996) (en banc) (employing the same procedure on remand for a hearing on counsel's ineffectiveness).

¶ 21 Judgment of sentence affirmed. Case remanded. Jurisdiction relinquished.