J. S26029/17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| JUSTIN ASAAD COOKE, | : | |
| | : | |
| Appellant | : | No. 450 MDA 2016 |

Appeal from the Judgment of Sentence October 15, 2015
In the Court of Common Pleas of Dauphin County
Criminal Division at No.: CP-22-CR-0000936-2015

BEFORE: BOWES, J., DUBOW, J., and FITZGERALD, J.[*]

MEMORANDUM BY DUBOW, J.: **FILED AUGUST 11, 2017**

Appellant, Justin Asaad Cooke, appeals from the Judgment of Sentence entered by the Dauphin County Court of Common Pleas following his conviction by a jury of First-Degree Murder and Criminal Conspiracy.[1] After careful review, we affirm.

The relevant facts, as gleaned from the certified record and the trial court's Pa.R.A.P. 1925(a) Opinion, are as follows. On May 30, 2014, Appellant and his brother, Miles Cooke, shot and killed the victim, Ronald McGruder, near the corner of Hanover and Cameron Streets in Harrisburg, Pennsylvania. The following events leading up to the murder are relevant to our review.

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 2502(a) and 18 Pa.C.S. § 903, respectively.

Two nights before the murder, Appellant and McGruder had gotten into a heated argument when McGruder blamed Appellant's brother Miles Cooke for killing McGruder's friend Warren Beasley in 2013. McGruder told Appellant that, "if you want to kill me, if you feel some type of way and you want to do something to me, my heart is on my sleeve. So if you got to take a shot, take a shot." Trial Court Opinion, dated 7/19/16, at 3 n.6.

On the night of May 29, 2014, McGruder went out drinking with his friend James Moffitt and visited Double D's bar. Surveillance video showed that both Appellant and his brother Miles were at Double D's at the same time. The video also showed Appellant, Miles, and McGruder leave Double D's together and enter a tan Audi. Appellant entered the front passenger seat, Miles entered the driver's seat, and McGruder entered the back seat. The three men left Double D's parking lot at 1:46 A.M. on May 30, 2014.

Jasmine Bullock, an eyewitness to the murder who resided on Hanover Street, awoke to screaming from the street and looked out her window to see Appellant, Miles, and McGruder. She witnessed one of the men stand over McGruder on the ground and shoot him twice in the head. Bullock called 911 at 1:58 A.M. Although she could not see the faces of the two standing men, Bullock provided clothing descriptions matching Appellant as the shooter and Miles nearby. After the shooting, Appellant and Miles ran toward their running car, entered the vehicle in the same positions as when they left the bar, and drove away.

Appellant and Miles provided identical voluntary statements to police shortly after the murder. They confirmed the clothing that they were wearing, the precise route they took after leaving the bar with McGruder, and that they were driving a tan 2000 Audi owned by Miles' girlfriend.

Police arrested Miles on October 2, 2014, the day police obtained arrest warrants for both Appellant and Miles. Police were unable to arrest Appellant that same day after media coverage widely publicized Miles's arrest and the fact that they were looking for Appellant. Police in North Carolina arrested Appellant on October 22, 2014.[2]

Appellant filed a Motion *in Limine* seeking to preclude evidence of Appellant's flight and arrest on unrelated charges in North Carolina and to omit any jury instructions regarding flight. The trial court deferred ruling on this Motion until hearing the evidence produced at trial.

Appellant also filed a Motion *in Limine* to preclude Williams' testimony about McGruder's statements, arguing that the statements were irrelevant and constituted inadmissible hearsay. On October 7, 2015, the trial court conducted a hearing prior to trial. The Commonwealth argued that this testimony was evidence of Appellant's motive to kill McGruder. The trial court denied Appellant's Motion on October 8, 2015.

---

[2] Prior to his arrest, Appellant sold drugs to undercover police officers, then refused to exit a hotel room voluntarily, and provided the false name of Jerry Asaad Smith. After learning of Appellant's outstanding warrant for homicide, North Carolina police arranged for Appellant's transport back to Pennsylvania.

Appellant and Miles proceeded to a joint jury trial. The Commonwealth presented the testimony of the eyewitness Jasmine Bullock, McGruder's friend James Moffitt, investigating detectives, a forensic pathologist, emergency responders, a forensic investigator, and a North Carolina detective. The Commonwealth also presented video surveillance evidence from a church near the crime scene, Miles' cell phone records, and cell phone tower data.

Appellant presented the testimony of Miles's girlfriend Dorian Bradford, a second resident, John Stoddart, who heard gunshots the night of the murder and purportedly observed the fleeing car's taillights, and an investigator from the Dauphin County Public Defender's Office.

At the close of testimony and after permitting the testimony about Appellant's flight and arrest in North Carolina, the trial court provided a jury instruction regarding flight or concealment as evidence of Appellant's consciousness of guilt.

The jury convicted Appellant of First-Degree Murder and Criminal Conspiracy. On October 15, 2015, the trial court sentenced Appellant to the statutorily mandated term of life in prison.[3] Appellant filed a timely Post-Sentence Motion, which was denied by operation of law on February 17, 2016.

---

[3] 42 Pa.C.S. § 9711.

Appellant filed a timely Notice of Appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents three issues for our review:

I. Did not the lower court abuse its discretion by failing to grant [Appellant] a new trial on the basis that the guilty verdict was against the weight of the evidence when the totality of the evidence on the basic issues of the case was so inconsistent as to be irreconcilable?

II. Did not the court err in denying [Appellant's] Motion *in Limine* to exclude reference to the decedent's statements by a Commonwealth witness when such statements should have been excluded as hearsay or alternatively as irrelevant?

III. Did not the court err in denying [Appellant's] Motion *in Limine* to exclude testimony describing [Appellant's] purported flight to North Carolina and to forego any jury instruction based thereon relating to flight as consciousness of guilt?

Appellant's Brief at 5 (capitalization omitted).

**Weight of the Evidence**

In his first issue, Appellant avers that the jury's verdict was against the weight of the evidence. *See* Appellant's Brief at 32-37. When considering challenges to the weight of the evidence, we apply the following precepts:

> The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of witnesses.
>
> Appellate review of a weight claim is a review of the exercise of discretion, not the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons

advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

***Commonwealth v. Talbert***, 129 A.3d 536, 545-46 (Pa. Super. 2015), *appeal denied*, 138 A.3d 4 (Pa. 2016) (quotation marks and citations omitted).

Resolving contradictory testimony and questions of credibility are matters for the finder of fact. ***Commonwealth v. Hopkins***, 747 A.2d 910, 917 (Pa. Super. 2000). Further, "[i]n order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague[,] and uncertain that the verdict shocks the conscience of the court." ***Talbert, supra*** at 546 (quotation marks and citation omitted). It is well-settled that we cannot substitute our judgment for that of the trier of fact. ***Id***.

"[A] true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." ***Commonwealth v. Thompson***, 106 A.3d 742, 758 (Pa. Super. 2014).

Appellant essentially asks us to reassess the credibility of the eyewitness and reweigh the testimony and evidence presented at trial. We cannot and will not do so. Our review of the record shows that the evidence

is not tenuous, vague, or uncertain, and the verdict was not so contrary to the evidence as to shock the court's conscience. We, thus, conclude that Appellant is not entitled to relief on this claim.

**Admission of Victim's Out-of-Court Statements**

In his second claim, Appellant avers that the trial court erred in denying his Motion *in Limine* to preclude certain testimony from Courtney Williams about McGruder's statements to Appellant before the murder.

As described above, Williams overheard Appellant arguing with McGruder two nights before McGruder's murder. McGruder blamed Appellant's brother Miles for killing McGruder's friend Warren Beasley in 2013. McGruder told Appellant that, "if you want to kill me, if you feel some type of way and you want to do something to me, my heart is on my sleeve. So if you got to take a shot, take a shot." Trial Court Opinion, dated 7/19/16, at 3 n.6.

The "[a]dmission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." **Commonwealth v. Tyson**, 119 A.3d 353, 357 (Pa. Super. 2015) (citation and quotation omitted). "[A]n abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will[,] or partiality, as

shown by the evidence or the record." ***Commonwealth v. Cameron***, 780 A.2d 688, 692 (Pa. Super. 2001) (citation and quotation omitted).

Relevance is the threshold for admissibility of evidence. ***Commonwealth v. Cook***, 952 A.2d 594, 612 (Pa. 2008). Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Pa.R.E. 401; ***Commonwealth v. Drumheller***, 808 A.2d 893, 904 (Pa. 2002). "Evidence that is not relevant is not admissible." Pa.R.E. 402. In addition, "[t]he court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

Hearsay is an out-of-court statement offered for the truth of the matter asserted. Pa.R.E. 801(c). It is generally inadmissible unless it falls within one of the exceptions to the hearsay rule delineated in the Rules of Evidence. ***Commonwealth v. Busanet***, 54 A.3d 35, 68 (Pa. 2012). "An out-of-court statement is not hearsay when it has a purpose other than to convince the fact finder of the truth of the statement[,]" such as motive or the effect on the listener. ***Id. See also*** Daniel J. Anders, Ohlbaum on the Pennsylvania Rules of Evidence § 801.11[1] *et seq.* (2017 ed. LexisNexis Matthew Bender).

The trial court addressed Appellant's hearsay challenge as follows:

Contrary to [Appellant's] assertions, Ms. Williams' statements were not hearsay. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. ***Commonwealth v. Griffin***, [] 515 A.2d 865, 870 ([Pa.] 1986). When an extrajudicial statement is offered for a purpose other than providing the truth of its contents, it is not hearsay and is not excludable under the hearsay rule. ***Id.*** Thus, statements are admissible to establish ill-will or motive where they are not being offered for the truth of the matter asserted. ***See Commonwealth v. Brown***, [] 648 A.2d 1177, 1182 ([Pa.] 1994) ([o]ut-of-court statement, which was not offered for its truth, but only for the fact that it was made, was not inadmissible hearsay).[22]

> [22] For a complete discussion, ***see Commonwealth v. Puksar***, [740 A.2d 219] ([Pa.] 1999).

In the instant matter, the Commonwealth attempted to establish motive for killing Mr. McGruder by showing that there was ill-will between Mr. McGruder and [Appellant]. The Commonwealth did not offer Ms. Williams' testimony to prove that [Appellant] actually committed the killing of Mr. McGruder [or that Miles actually killed Beasley in 2013], but to supply a motive for [k]illing Mr. McGruder. Accordingly, this statement (that Mr. McGruder and [Appellant] got into a heated discussion over the killing of Warren Beasley) was admissible, since it was not offered to prove the truth of the matter asserted, but rather to establish a motive for the killing[].

Additionally, we gave the following jury instructions in regards to motive:

> Motive is not a part of the definition of [M]urder or any other crime. The Commonwealth is not required to prove a motive for the commission of the crime charged. However, you should consider the evidence of motive or the lack of motive.... You should weigh and consider the evidence tending to show motive, along with all other evidence in deciding whether the defendant is guilty or not guilty of the crime charged. It is entirely up to you to determine what weight should be given to the evidence concerning motive.

> Now, of course there was the testimony, I believe it was the very first witness, Courtney Williams and that testimony was **offered to show motive**. She had testified about a certain conversation she heard or overheard and so forth and **that evidence was not offered to prove the truth or falsity of what happened with Mr. Beasle[y]'s killing. It was only offered to show a possible motive in the killing of Mr. McGruder. You are to accept that evidence only for that limited purpose.**
>
> Accordingly, Ms. Williams' testimony was not hearsay and it was properly admitted as evidence.

Trial Court Opinion, dated 7/19/16, at 10-11 (footnote omitted; emphasis in original). We agree with the trial court's assessment.

As noted by the Commonwealth and the trial court, the Commonwealth did not present McGruder's statement to demonstrate that Miles actually shot and killed Beasley in 2013. Rather, the Commonwealth presented the statement because it demonstrated that McGruder told Appellant this information, and such information served as the motive for the McGruder's murder. *See Commonwealth v. Fisher*, 681 A.2d 130, 140 (Pa. 1996), *superseded on other grounds* by 42 Pa.C.S. § 9711(a) (holding that the victim's statements about the defendant that were communicated to the defendant were not hearsay when the statements were offered to prove the defendant's motive for killing the victim). We discern no abuse of discretion or error of law.

**Evidence of Flight to North Carolina and Concealment**

In his third claim, Appellant avers that "[t]here was an insufficient showing that [Appellant's] presence in the state of North Carolina could be construed as 'flight.'" Appellant's Brief at 48. Accordingly, Appellant contends that the trial court (1) erred in permitting this testimony, and (2) erred in providing a jury instruction regarding flight as consciousness of guilt. *Id.*

As we have previously stated our standard of review of a trial court's evidentiary rulings, we need not repeat it here. We review a challenge to a jury charge for an abuse of discretion. *Commonwealth v. Greer*, 951 A.2d 346, 354 (Pa. 2008). "A jury instruction is proper if supported by the evidence of record." *Commonwealth v. Clark*, 961 A.2d 80, 92 (Pa. 2008).

Where "a person has reason to know he is wanted in connection with a crime, and proceeds to flee or conceal himself from [] law enforcement authorities, such evasive conduct is evidence of guilt and may form a basis, in connection with other proof, from which guilt may be inferred." *Commonwealth v. Thoeun Tha*, 64 A.3d 704, 714 (Pa. Super. 2013) (citations omitted). "A defendant's knowledge may be inferred from the circumstances attendant [to] his flight." *Id. See also Commonwealth v. Whack*, 393 A.2d 417, 420 (Pa. 1978) (holding that where the defendant was seen running from the scene of a stabbing, and was not seen again at

his home or the places he usually frequented for approximately two months, the evidence was sufficient to support a reasonable inference that the defendant had deliberately attempted to conceal his whereabouts to avoid prosecution).

Here, the record reflects that McGruder was murdered on May 30, 2014. Both Appellant and Miles provided statements to police shortly thereafter in connection with the shooting, and confirmed that they were with McGruder the night of the murder. Police arrested Miles on October 2, 2014, the same day police filed the Complaint and obtained arrest warrants for both Appellant and Miles. Detective Iachini testified about the extensive media coverage of Miles's arrest, which included statements that police were also seeking Appellant.

On October 22, 2014, police arrested Appellant in North Carolina. Appellant provided the North Carolina police a the false name in an attempt to conceal his identity.

The trial court provided the following flight instruction to the jury:

Also, there was evidence tending to show flight or concealment. There was evidence indicating the testimony of police officers that tended to show the defendant may have attempted to flee from the police by leaving the Harrisburg area after the arrest warrants were filed in this particular case. Generally speaking, when a crime has been committed and a person thinks that he or she may be accused of committing the crime and he or she flees or conceals himself or herself, such flight or concealment is a circumstance tending to prove the person is conscious of guilt.

Such flight or concealment does not necessarily show consciousness of guilt in every case. A person may flee or hide

- 12 -

for some other motive and may do so even though innocent. Whether the evidence of flight or concealment in this particular case should be looked at as tending to prove guilt depends upon the facts and circumstances of this case and especially upon the motives that may have prompted the flight or concealment. You may not find the defendant guilty solely on the basis of evidence of flight or concealment.

N.T. Trial at 448.

Though no direct evidence was presented to establish Appellant's actual knowledge that he was being sought by the police for this crime, we conclude that the above-mentioned circumstantial evidence permits a reasonable inference that Appellant was aware that the police were looking for him in connection with the shooting. **See Whack**, **supra**. Therefore, the trial court properly exercised its discretion in admitting this evidence and giving the jury an appropriate flight instruction.

Judgment of Sentence affirmed.

Judge Bowes joins the memorandum.

Justice Fitzgerald concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/11/2017

- 13 -