J-S38021-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KYLE LITTLE | : | |
| | : | |
| Appellant | : | No. 1831 EDA 2021 |

Appeal from the Judgment of Sentence Entered January 14, 2008
In the Court of Common Pleas of Philadelphia County
Criminal Division at CP-51-CR-0900471-2006

BEFORE:  KUNSELMAN, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY MURRAY, J.:                    **FILED MARCH 13, 2023**

Kyle Little (Appellant) appeals *nunc pro tunc* from the judgment of sentence entered following his jury conviction of first-degree murder and possession of an instrument of crime.[1]  We affirm.

In a prior decision, this Court summarized the underlying facts:

The Commonwealth's case depended primarily on two eyewitnesses to the shooting of the decedent, Lamont Adams ("Adams").  Brandon Mundy ("Mundy"), who knew both Adams and [Appellant], testified that on September 23, 2004, at around 9:00 p.m., he was standing with a group of people in the area of 26th and Cambria Streets in Philadelphia.  The group included [Appellant], Khaliaf Alston ("Alston"), and individuals named Ronnie, Matt, Crittie, and Meechie.  According to Mundy, when Adams walked by the group, Alston said "[t]hat's the boy that told on me," and "I'm about to go pop him."  Other members of the group tried to dissuade Alston from doing so.  When Adams walked past the group again, Mundy testified that [Appellant] walked over and shot Adams three times, and then stood over him and shot

---

[1] 18 Pa.C.S.A. §§ 2502(a) and 907.

him repeatedly. The assistant medical examiner later testified that Adams was shot 14 times, many in the back.

Hassan Kinard ("Kinard") was a friend of Adams and an acquaintance of [Appellant]. He testified that on the night in question he stopped briefly to talk with Adams on his way to his girlfriend's house. Kinard then walked past [Appellant] and said, "what's up," after which time he heard [Appellant] tell Ronnie, "I'm going to get that nigger." [Kinard] looked back and saw [Appellant] arguing with Adams. Kinard testified that he then observed [Appellant] pull a black and silver gun out and shoot Adams, who fell forward. According to Kinard, [Appellant] "then shot him all in his back" and walked away from the scene.

[Appellant] called Alston as the single witness in his case-in-chief. At the time of his testimony, Alston had been convicted of numerous other crimes unrelated to the killing of Adams, including a second-degree murder with a sentence of [life in prison without possibility of parole (LWOP)] and a third-degree murder with a sentence of [LWOP]. Alston, who had known [Appellant] for approximately ten years, testified that Adams had robbed him about a week prior to the murder, and that when the two met on September 23[, 2004, Alston] shot Adams after thinking that he saw Adams reach for a gun. Alston said that he did not see [Appellant] at the scene at the time of the shooting.

***Commonwealth v. Little***, 63 A.3d 837 (Pa. Super. Nov. 27, 2012) (unpublished memorandum at 1-2) (record citations omitted).

A dispute arose during Alston's testimony. Defense counsel sought to elicit evidence that Alston could face the death penalty as a result of his testimony. The trial court initially permitted Alston to explain that he was testifying against the advice of counsel. N.T., 11/13/07, at 46-47. However, the court did not allow testimony regarding the specific consequences Alston believed he **might** face because of his testimony. ***Id.*** at 47-48.

- 2 -

On cross-examination, Alston explained he was serving two sentences of LWOP and was never getting out of jail. *Id.* at 29-31, 49.  During sidebar, defense counsel again requested the court's permission to ask Alston about the possible consequences of his testimony:

> [Defense Counsel:]  [T]he Commonwealth wants to get into the fact that [Alston] has nothing to lose, **if they get into the fact that he has nothing to lose**, I'm going to ask him, you have been advised that if you testify in this case you could be arrested for first-degree murder and face the death penalty, so he does have something to lose by this testimony in the courtroom.
>
> [The Commonwealth:] [Alston is] never going to be prosecuted for the murder of Lamont Adams, he has nothing to lose.
>
> [Defense Counsel:] Well, I don't know that.

*Id.* at 64-65 (emphasis added).  The trial court did not issue a ruling at that time.

The Commonwealth continued to cross-examine Alston; the Commonwealth did not ask about Alston's testimony causing him to be charged with Adams' murder. *Id.* at 67-95.  Another sidebar occurred during defense counsel's re-direct of Alston after defense counsel attempted to ask Alston about the possible consequences of his testimony. *See id.* at 96.

> [THE COURT:] Counsel, we have had this discussion.  Give me an offer of proof, what you want to ask him is what?
>
> [Defense Counsel:] … [D]oes [Alston] understand that he could be subject to being arrested and charged with first-degree murder and facing a possible sentence of death.
>
> [THE COURT:] Counsel, we're not going into whether he could be facing a possible sentence of death.

If the question to him is if he's aware that he could be arrested and charged with murder, clearly that would be within the purview of what he's admitted to, and I think he's already been told that, but you could ask him that, but whether he could be subject to death, that's too much speculation as between now and then whether or not he could or not, so no, if you want to ask him could he be charged with murder for his admission, but we're not going into the death penalty.

[Defense Counsel:] **Very well.**

*Id.* at 97-98 (emphasis added). Defense counsel then asked Alston whether he was aware the Commonwealth could charge him with first-degree murder of Adams. Alston replied, "Yes; you asked me that several times." *Id.* at 99.

Thereafter,

[the] jury convicted [Appellant] of the aforementioned crimes. The trial court sentenced [Appellant] to a term of incarceration of life for the murder conviction and to one and one half to five years for the possession of an instrument of crime conviction. Appointed counsel failed to file a timely appeal, after which [Appellant's] direct appeal rights were reinstated upon the filing of a petition pursuant to the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-46.

*Little*, 63 A.3d 837 (unpublished memorandum at 2-3) (record citations omitted).

This Court affirmed Appellant's sentence on November 27, 2012, and on June 26, 2013, the Pennsylvania Supreme Court denied allowance of appeal. *Commonwealth v. Little*, 63 A.3d 837 (Pa. Super. 2012), *appeal denied*, 70 A.3d 810 (Pa. 2013).

On April 30, 2014, Appellant filed a timely *pro se* PCRA petition. The PCRA court held a hearing in March 2017, after delays caused by change of

counsel, the filing of multiple amended PCRA petitions, and the United States Supreme Court decisions in **Miller v. Alabama**, 567 U.S. 460 (2012) and **Montgomery v. Louisiana**, 577 U.S. 190 (2016).[2] On July 19, 2019, the PCRA court granted Appellant's request for resentencing pursuant to **Miller**/**Montgomery** but denied Appellant's remaining claims of ineffective assistance of counsel. **See** PCRA Court Opinion, 7/17/19, at 1-10.[3] Appellant filed a timely appeal. On January 15, 2021, this Court affirmed in part, reversed in part, and remanded for further proceedings. **Commonwealth v. Little**, 246 A.3d 312 (Pa. Super. 2021). In sum, we reinstated Appellant's direct appeal rights *nunc pro tunc* but limited Appellant's appeal to the issue of whether the trial court "abused its discretion in restricting Alston's examination." **Id.** at 331. This timely appeal followed.

Appellant raises a single issue for our review:

Did the [t]rial [c]ourt abuse its[] discretion, violating Appellant's rights under the 5th and 14th Amendments to the U.S. Constitution and Article 1, § 9 of the Pennsylvania Constitution by limiting the defense examination of defense witness Alston?

Appellant's Brief at 3 (footnote omitted). Appellant argues:

[T]he trial court abused its discretion by limiting the examination of defense witness Alston.

_____

[2] Appellant was a juvenile when he murdered Adams.

[3] On November 17, 2020, following remand from this Court, the PCRA court issued a supplemental opinion.

- 5 -

Alston had testified that he committed the crime and not the Appellant. The Commonwealth, through its[] questioning and argument to the [c]ourt wanted to argue to the jury that Alston had nothing to lose from inculpating himself. Defense counsel sought to elicit the fact that Alston could be charged with a capital offense[,] which could result in the death penalty being imposed. The [t]rial [c]ourt denied defense counsel's multiple requests to permit this line of questioning. Appellant avers this was an abuse of discretion and not harmless error.

Appellant's Brief at 12.

We recognize at the outset:

[O]ur standard of review for evidentiary rulings is a narrow one: when we review a trial court's ruling on admission of evidence, we must acknowledge that decisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law. In addition, for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party. A party suffers prejudice when the trial court's error could have affected the verdict.

***Commonwealth v. Tyack***, 128 A.3d 254, 257 (Pa. Super. 2015) (citations and corrections omitted).

An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

***Commonwealth v. Cameron***, 780 A.2d 688, 692 (Pa. Super. 2001).

Our review discloses that other than a single question regarding Alston's life sentence, the Commonwealth asked no questions implying that Alston would not suffer adverse consequences from testifying. ***See*** N.T., 11/13/07, at 48-95; 104-08. The Commonwealth attacked Alston's testimony in other ways. It pointed to Alston's prior convictions. ***Id.*** at 48-49. The

Commonwealth also highlighted the discrepancies between Alston's version of events and the accounts of other eyewitnesses.  *Id.* at 67, 70-75, 80-95.  The Commonwealth emphasized Alston's refusal to speak to the police at the time, his acrimonious history with the investigating detective, his failure to offer his testimony until contacted by defense counsel, and his history of testifying on behalf of others who had been charged with murder.  ***See id.*** at 66-71, 74-79, 105-06.

Upon review, we discern no abuse of discretion by the trial court in disallowing speculative testimony about possible charges, verdicts and sentences that could result from Alston's testimony.[4]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/13/2023

---

[4] As noted above, the trial court permitted defense counsel to elicit testimony that Alston was acting against the advice of counsel and that the Commonwealth could try him for first-degree murder.  N.T., 11/13/07, at 46-47, 99.